525 A.2d 1269

Helms Express, Petitioner *v.* Workmen's Compensation Appeal Board (Lemonds), Respondents.

Argued March 24, 1987, before President Judge CRUMLISH, JR., Judge PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Arthur J. Leonard,* with him, *Thomas V. Gebler, Jr., Robb, Leonard & Mulvihill,* for petitioner.

*Neil J. Rovner, Angino & Rovner, P.C.,* for respondent, Jessie S. Lemonds, widow.

OPINION BY SENIOR JUDGE NARICK, May 21, 1987:

Helms Express (Petitioner) appeals from an order of the Workmen's Compensation Appeal Board (Board)

which reversed a referee's decision granting Petitioner a right of subrogation pursuant to Section 319 of The Pennsylvania Workmen's Compensation Act. (Act), Act of June 2, 1915; P.L. 736, *as amended*, 77 P.S. §671. For the reasons set forth below, we reverse the decision of the Board denying subrogation.

Grover Lemonds (Claimant) was a truck driver for Petitioner. On September 4, 1981, while in the course of his employment, Claimant suffered a fall which caused a severe skull fracture. Claimant was admitted to Geisinger Medical Center for this injury. During the course of his hospital stay, Claimant developed a gastro-intestinal hemorrhage and this condition eventually led to Claimant's death on September 22, 1981.

Claimant's widow, Jessie S. Lemonds, filed a Petition for Compensation on July 14, 1982. At the hearing before the referee, Claimant presented the deposition testimony of Dr. George J. Paul, who testified that the trauma of the head injury created stress which led to gastrointestinal hemorrhaging and finally death. Petitioner proffered no evidence to contradict Dr. Paul. The referee concluded that Claimant's death was work-related. This decision was initially appealed by Petitioner but the appeal was withdrawn.

Claimant's widow subsequently entered into a settlement agreement with Geisinger Medical Center regarding a medical malpractice claim she had instituted against the hospital. In settlement of her claim, Claimant's widow received two hundred seventy-five thousand dollars ($275,000); however, the settlement agreement contained no admission of negligence or liability on the part of Geisinger Medical Center.

Based on this settlement agreement, Petitioner filed a petition claiming a right of subrogation. The referee concluded that Claimant's death was a result of complications of the skull fracture and that Petitioner was enti-

tled to subrogation. The Board took no additional evidence but reversed the referee concluding that "the negligent conduct of the health providers was separate and distinct from Claimant's injury at work and the negligent conduct did not occur on the employer's premises", and, therefore, as a matter of law Petitioner was not entitled to subrogation.

On appeal, Petitioner contends that (1) the referee's decision to award subrogation was supported by substantial evidence and, therefore, the Board's order denying subrogation improperly exceeded its scope of review; (2) an employer has a right of subrogation when an employee receives a medical malpractice recovery regarding a compensable injury; and (3) the employer need not prove the third party's negligence in order to enforce its right of subrogation.

Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986). Pursuant to Section 423 of the Act, 77 P.S. §854, the Board unless it chooses to hear new evidence is bound by the referee's findings of fact unless the findings are not supported by substantial competent evidence. *See Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). An employer's right to subrogation is a question of law based upon findings of fact. Thus, we must determine whether the referee's findings were based upon substantial competent evidence and in accordance with the law.

The subrogation rights of an employer are set forth in Section 319 of the Act, 77 P.S. §671, which reads in pertinent part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; . . .

The right of subrogation is founded on principles of equity which seek (1) to prevent double recovery for the same injury by a claimant, (2) to ensure that the employer is not compelled to make compensation payments necessitated by the negligence of a third party, and (3) to prevent a third party tortfeasor from escaping liability for his negligence. *See Heiser v. Workmen's Compensation Appeal Board,* 95 Pa. Commonwealth Ct. 350, 505 A.2d 1060 (1986) and *Stark v. Posh Construction Co.,* 192 Pa. Superior Ct. 409, 162 A.2d 9 (1960). In order for an employer to establish a right of subrogation, the employer must show he is compelled to make payments by reason of the negligence of a third party and the fund to which he seeks subrogation was for the same compensable injury for which he is liable under the Act. *Dale Manufacturing Co. v. Workmen's Compensation Appeal Board (Bressi),* 491 Pa. 493, 497, 421 A.2d 653, 655 (1980), *citing Dale Manufacturing Co. v. Workmen's Compensation Appeal Board (Bressi),* 34 Pa. Commonwealth Ct. 31, 35, 382 A.2d 1256, 1259 (1978).

Hence, where a third party's negligent conduct results in injury to an employee while in the course of his employment there is a clear right to subrogation. In *Heiser,* subrogation was granted where a claimant injured in an automobile accident while in the course of employment received a third party recovery against the driver responsible for the accident. However, Section 319 of the Act does not permit reduction in compensa-

tion liability for the compensable injury because of a third party recovery which occurs after the original injury is incurred, particularly if the subsequent injury is not "in whole or in part" a contributing factor in the original "compensable injury". *Maitland Brothers Co., Inc. v. Workmen's Compensation Appeal Board (Moser)*, 92 Pa. Commonwealth Ct. 421, 425, 499 A.2d 713, 715 (1985). In *Maitland,* an employer was found not entitled to subrogation where an employee who suffered a work-related back injury was in an automobile accident nine months after the original injury. As a result of the automobile accident, the employee again injured his back and received a settlement from the tortfeasor regarding this second injury. In denying subrogation, the court in *Maitland* noted that the medical testimony of record clearly established that it was medically impossible to apportion the injuries to employee's back between the employer and the third party tortfeasor. *Id.* at 424, 499 A.2d at 714-15.

In the case at issue, the third party's negligent conduct occurred while Claimant was being hospitalized for the original injury. It is long settled that where the negligence of parties who treat a worker causes injuries beyond those originally caused by the compensable injury itself, the treatment being a product of the original injury imposes liability on the employer to the full extent of the disability or death due to what happened during the course of negligent treatment. *Powell v. Sacred Heart Hospital,* 99 Pa. Commonwealth Ct. 575, 579, 514 A.2d 241, 243 (1986). In *Powell,* a claimant who was injured in the course of employment, and required surgery, died from anesthesia. This Court, in granting the subrogation claim, reasoned that the surgical procedure was required in order to alleviate a condition caused in the course of employment, and, therefore, was not a separate event dissociated from the original injury.

Although subrogation out of malpractice recovery has been denied in certain instances, we find those cases distinguishable from the case at hand. In *Dale Manufacturing* at 497, 421 A.2d at 655, our Supreme Court noted that the employer failed to offer medical evidence explaining the effect of the medical treatment upon the original compensable injury nor did the employer request the appointment of an independent medical examiner. Thus, the Supreme Court denied subrogation concluding that there was *no evidence of record* on which to make a determination as to whether the surgeon's failure to remove the cottonoid pad from the wound and the subsequent surgery required to remove the pad "either aggravated the original injury or caused a new and independent one". *Id.* at 498-99, 421 A.2d at 656.

A request for subrogation was also denied in *Jefferson Medical College Hospital v. Savage*, 7 Pa. Commonwealth Ct. 35, 298 A.2d 694 (1972). In *Savage*, a claimant who suffered a work-related hip injury sustained two additional injuries to the hip during the course of therapy treatment. However, two points distinguish *Savage* from the instant matter: (1) the subrogation claim in *Savage* was for compensation benefits paid *prior* to surgery, and no subrogation claim was made for benefits payable due to injuries suffered as a result of surgery; and (2) there was a stipulation that the third party settlement fund was for the subsequent injury to which no compensation charges were filed against the carrier. *See Powell* at 580-81, 514 A.2d at 244.

In the case at hand, the referee found, based on Dr. Paul's testimony, that the results of the skull fracture led to cerebral damage, and the cerebral damage led to hemorrhaging, which established unequivocally that the injury Claimant suffered at work resulted in Claimant's death. We agree. Claimant's hospitalization was clearly

necessitated by the injury at work, and the trauma of the head injury led to gastrointestinal hemorrhaging and Claimant's eventual demise. This finding as to causation could not be reversed by the Board absent a finding that Dr. Paul lacked competence or on the basis of additional testimony taken by the Board. *See Universal Cyclops Steel Corp.* at 184, 305 A.2d at 762. Neither was done; therefore, based upon the testimony of Dr. Paul, and the lack of any evidence to the contrary, we must conclude that Claimant's hemorrhage condition and death were not separate events dissociated from the original injury. Therefore, Petitioner has a clear right to subrogation.

Lastly, Petitioner contends that in order to be entitled to a subrogation credit for future compensation, proof of the third party's negligence when there is a settlement of a claim against the third party, is unnecessary. We agree. This Court in *Heiser* held that the fact that the fund realized in a claim against a third party was in the form of a settlement rather than verdict is of no consequence, and mere proof of a third party settlement is sufficient to establish an employer's right to subrogation.

Accordingly, the Board's conclusion that Claimant's death was separate and distinct from the original injury is not supported by any evidence in the record. Therefore, the Board exceeded its scope of review when it reversed the referee's decision which was supported by substantial evidence. For the foregoing reasons we reverse the Board's decision and order.

## ORDER

AND NOW, this 21st day of May, 1987, the order of the Workmen's Compensation Appeal Board at No. A-90035 is reversed and the order of the referee is reinstated.