781 A.2d 1146

### John L. THOMPSON

v.

### WORKERS' COMPENSATION APPEAL BOARD (USF&G COMPANY and Craig Welding Equipment Rental).

### Appeal of USF&G Company and Craig Welding & Equipment Rental.

Supreme Court of Pennsylvania.

Argued Sept. 11, 2000.

Decided Oct. 17, 2001.

---

Judith Olmstead, Pittsburgh, for USF&G Co. and Craig Welding and Equipment Rental.

Amber Marie Kenger, James A. Holzman, for WCAB.

James J. Gillespie, for John L. Thompson.

Annabelle R. Cedar, George Martin, for amicus–John L. Thompson.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

### OPINION OF THE COURT

CASTILLE, Justice:

Appellee John L. Thompson, who suffered work-related injuries while in the employ of appellant Craig Welding and Equipment Rental ("Craig"), received workers' compensation and medical benefits through Craig and its workers' compensation carrier, appellant USF & G Company ("USF & G"). Thompson also filed and settled mid-trial a product liability action against the entities who manufactured, distributed and/or owned the equipment on which he was injured. Following the settlement, appellants filed a Petition to Suspend Compensation and Enforce Subrogation Lien pursuant to § 319 of the Worker's Compensation Act, 77 P.S. § 671. A workers' compensation judge granted the petition and the Workers' Compensation Appeal Board affirmed, both adjudicative bodies finding that the statutory right of subrogation was absolute. A divided Commonwealth Court panel reversed in a published opinion, finding that the "equities" it perceived defeated the employer's statutorily mandated right of subrogation. This Court granted review to consider the proper scope of the right of subrogation provided by § 319. For the reasons that follow, we vacate the order of the Commonwealth Court and remand for proceedings consistent with this Opinion.

On August 5, 1988, appellee was testing an Omni 60 aerial platform that Craig intended to purchase when the tip boom, i.e., the top-most boom, suddenly collapsed causing appellee to

suffer injuries to his skull, jaw, ribs and teeth. Eleven days after the collapse, Craig conducted an inspection and tear-down of the Omni 60 to determine the cause of the accident. USF & G retained an expert who was present during the inspection and tear-down. William Craig, owner of appellant Craig, a Craig employee, the owner of the crane, a representative of the manufacturer and appellee's father were also present at the inspection. According to a report submitted by USF & G's expert, the design specifications of the aerial platform required that the tip boom's chain anchor plate be secured by five bolts to the lower end of the scaffold boom. Three of the bolts with lock washers still attached had backed out of the plate and were found in the bottom of the housing. A fourth bolt was severed in two, and the fifth bolt was never found. The expert opined that the collapse resulted from four of the bolts working loose and the remaining bolt failing due to overload and fatigue cracking. When the inspection was concluded, William Craig took possession of the three undamaged bolts and the two damaged pieces and certified in a memorandum that he had possession of the bolts from the damaged Omni 60.

Appellee filed a product liability action against Pettibone Corporation, Doering Equipment, Inc., and Marlift, Inc., *i.e.*, the manufacturers, suppliers and/or owners of the platform. Pettibone Texas Corporation subsequently was added as an additional defendant. The matter went to trial in November of 1993 at which time appellee called as a witness the USF & G expert who attended the inspection and tear-down of the Omni 60. The expert testified that the tip boom collapsed because its chain anchor plate was attached to the crane by only one bolt which broke as a result of overload. He further testified that the three intact bolts found in the crane housing had backed out of the chain anchor plate either because they were not properly torqued during maintenance or because the manufacturer failed to anticipate that the Omni 60 would be subject to vibrations during normal use causing the bolts to back out on their own. The expert also stated that, if he had the bolts, he could compare them to the bolts required by the

design specifications and ascertain whether they were the correct grade of bolts, determine if they were the original bolts installed at the time of manufacture or replacement bolts installed by the owner, and could measure for any elongation in the bolts. By the time of trial some five years since the inspection of the platform, however, William Craig had inadvertently lost the bolts. No party had requested to inspect the bolts between the August 1988 inspection and the spring of 1993.

On November 18, 1993, the third day of trial, the product liability defendants filed a motion in limine requesting that appellee be precluded from presenting any evidence of medical or indemnity benefits paid by USF & G as workers' compensation carrier for Craig as a sanction for appellee's inability to produce the bolts at trial.[1] The trial court ruled that the loss of the bolts substantially deprived defendants of the ability to prepare a defense and granted the motion in limine. At the request of the trial court, counsel for USF & G and Craig, who were not parties to the product liability action, were present at the time the motion in limine was argued and granted. The same day, appellee settled his product liability action for $300,000. The settlement was structured in a way that was obviously intended to defeat the employer's subrogation right: specifically, $200,000 was apportioned to appellee John Thompson and designated as compensation for pain and suffering, while $100,000 was apportioned to his wife for loss of consortium. On February 2, 1994, the trial court entered an order approving the terms of the settlement, including the parties' designation and allocation of the settlement funds. The court stated that the settlement was exclusive of all medical bills and lost wage payments because those claims were precluded by the court's in limine ruling. The court also opined, gratuitously in light of the fact that the issue was not before it, that USF & G's "subrogation claim has been completely compromised by its insured's destruction of vital evidence in the case."

1. The motion was a renewal of a motion the defendants filed at the time they first learned that the bolts had been lost.

On April 14, 1994, appellants filed their petition to suspend compensation to appellee and enforce their subrogation lien.[2] On January 23, 1995, the workers' compensation judge ("WCJ") granted the petition finding that: (1) appellants' subrogation right was absolute; (2) the allegations of wrongdoing against Craig were insufficient to deprive appellants of their subrogation right; (3) appellee and the defendants in the third party action could not unilaterally allocate the settlement proceeds in such a way as to deprive appellants of their full subrogation right; and (4) the amount of the settlement allocated to loss of consortium was subject to subrogation because there was no agreement between Craig and appellee regarding the amount of loss of consortium or an adjudication determining the actual amount of loss of consortium damages.[3] The Workers' Compensation Appeal Board ("WCAB") affirmed the WCJ's decision on December 20, 1996, holding that the WCJ had not committed an error of law and that the findings of fact were supported by substantial, competent evidence. *See Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

On direct appeal, a divided Commonwealth Court panel reversed the WCAB in a published opinion. The panel majority concluded that appellants were barred on "equitable grounds" from enforcing their statutory subrogation right. The majority analogized the situation to a personal injury claimant who inadvertently destroys or loses a defective product, noting that such a plaintiff "may be barred from recovering any damages from the alleged tortfeasor." [4] The majority

2. As of April 29, 1994, appellants had paid indemnity benefits to appellee in the amount of $8,673.68 and medical benefits in the amount of $97,070.95, for a total of $105,744.63.

3. This finding respecting loss of consortium predated this Court's decision in *Darr Construction Co. v. Workmen's Compensation Appeal Board (Walker)*, 552 Pa. 400, 715 A.2d 1075 (1998), which held that an employer has no subrogation interest in a claimant's spouse's loss of consortium recovery.

4. In support of this proposition, the majority cited our decision in *Schroeder v. Department of Transp.*, 551 Pa. 243, 710 A.2d 23 (1998). *Schroeder* adopted the Third Circuit's test for determining the proper

saw no reason why an employer and its compensation carrier who lose the defective product, as William Craig did here, should be entitled to what it viewed as "disparate treatment." The majority also found that appellants' failure to intervene in the product liability action to protect their subrogation interest, particularly after the trial court in that matter precluded evidence of lost wages and medical expenses in response to Craig having lost the bolts, was another factor weighing in favor of denying subrogation on "equitable" grounds. In reaching its decision, the majority distinguished *Winfree v. Philadelphia Electric Company*, 520 Pa. 392, 554 A.2d 485 (1989), a case that appellants cite for the proposition that the statutory right of subrogation is absolute. The majority concluded that this Court merely held that an "insufficient equitable basis" existed to deny subrogation in *Winfree*.

Judge Leadbetter dissented. In her view, this Court in *Winfree* "stated unequivocally" that the employer's right to subrogation under § 319 is absolute. In addition, the Commonwealth Court itself had held in *Kelly v. Workmen's Compensation Appeal Board (A–P–A Transport Corp.)*, 107 Pa. Cmwlth.223, 527 A.2d 1121 (1987) that equitable considerations do not outweigh the mandatory language of § 319. In the alternative, Judge Leadbetter would have found insufficient equitable reasons to defeat the statutory right in this case.

■ This Court's scope of review in workers' compensation matters is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 550 Pa. 319, 322, 705 A.2d 1290, 1291 (1997). Although the WCJ's decision must be based on substantial evidence, the WCJ is the ultimate finder

sanction in cases involving spoliation of evidence. *See Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir.1994). It bears noting that barring a claim entirely, as the Commonwealth Court did here, is the most extreme of sanctions and not one ineluctably commanded by *Schmid*.

of fact and the exclusive arbiter of credibility and evidentiary weight. *LTV Steel v. Workers' Compensation Appeal Board (Mozena)*, 562 Pa. 205, 223, 754 A.2d 666, 676 (2000) (citing *Bethenergy Mines v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Cmwlth.288, 572 A.2d 843, 844–45 (1990)).

Pertinent to the issues before this Court, the WCJ found that: William Craig retained the bolts when the Omni 60 was dismantled; all parties to the product liability action requested an examination of the bolts during the third party lawsuit; William Craig inadvertently lost the bolts resulting in a motion in limine to preclude evidence of wage loss and medical bills in the third party lawsuit; the trial judge in that suit held a conference in chambers to rule on the motion in limine at which USF & G's attorney and claims personnel were present; USF & G's attorney and claims personnel were present at various stages of the trial, but USF & G was never a party to the action nor asked to file briefs; prior to trial, during trial and during settlement negotiations, USF & G's counsel placed appellee and the defendants in the action on notice of its subrogation lien for indemnity and medical benefits paid.

 There is no dispute that these findings of fact are based upon substantial evidence since, for the most part, they derive from a stipulation of the parties. Nor is there any allegation that constitutional rights have been violated. Therefore, this Court's review is limited to determining whether the Commonwealth Court's holding on the question of subrogation was an error of law. Questions of law, of course, are subject to plenary review. *Universal Am–Can, Ltd. v. Workers' Compensation Appeal Board (Minteer)*, 563 Pa. 480, 486 n. 2, 762 A.2d 328, 331 n. 2 (2000).

 The principal legal issue before this Court is whether an employer's subrogation right under § 319 is absolute. The secondary issue is whether *ad hoc* "equitable" factors such as those cited by the Commonwealth Court panel majority—William Craig's inadvertent loss of the bolts resulting in the preclusion of evidence of medical bills and lost wages in the product liability action and appellants' failure to intervene

in that action to further protect their subrogation interest—warrant a conclusion that the employer in this case is equitably estopped from seeking subrogation.

Although originally a common law equitable doctrine, subrogation today may arise by statute or by virtue of an express agreement between the parties, as well as through operation of common law equitable principles. Here, subrogation arises by operation of a statute. Specifically, § 319 of the Workers' Compensation Act establishes that an employer is subrogated to his employee's rights against third parties for compensable work injuries:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation.

77 P.S. § 671. The statute is clear and unambiguous. It is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. Furthermore, it does more than confer a "right" of subrogation upon the employer; rather, subrogation is automatic. *See Smith v. Yellow Cab Co.*, 288 Pa. 85, 89, 135 A. 858, 860 (1927) (§ 319 establishes "that the employer is not given a right of subroga-

tion only, **but is 'subrogated' to the extent of the compensation paid**") (emphasis supplied).

In *Winfree,* this Court found the meaning of § 319 to be clear and unambiguous and recognized that it generally established an absolute right of subrogation:

> [T]he statute clearly and unambiguously states that, " . . . the employer shall be subrogated to the right of the employee . . . against such third party to the extent of compensation payable. . . . " The legislature could not have manifested more clearly its intent that the subrogation rights of the employer are absolute. We have consistently held in the past that the purpose of the Act was to provide the employee an exclusive right to benefits without the necessity of proving fault in exchange for abrogation of the employee's common law negligence remedies. *LeFlar v. Gulf Creek Indus. Park No. 2,* 511 Pa. 574, 515 A.2d 875 (1986); *Socha v. Metz,* 385 Pa. 632, 123 A.2d 837 (1956). Following the statutory scheme, we recently held that the failure to raise the Act as an affirmative defense to a tort action did not result in a waiver. *LeFlar, supra.* Therefore, as a general principle of law, the employer's subrogation rights are statutorily absolute and can be abrogated only by choice.

*Id.* at 396–97, 554 A.2d at 487. Similarly, in *Curtis v. Simpson Chevrolet,* 348 F.Supp. 1062 (E.D.Pa.1972), the United States District Court for the Eastern District of Pennsylvania recognized the generally absolute nature of § 319 subrogation. There, the employee received workers' compensation benefits for injuries suffered when the brakes on the truck he was driving failed while he was descending a steep hill. The employee sued two third parties who he alleged negligently repaired and maintained the truck. The third party action was settled, and the employer and its worker's compensation carrier sought subrogation under § 319. The employee argued that subrogation was an equitable doctrine; that his employer and the carrier had an affirmative duty to assist him in his efforts to recover in the third party action; and that, the employer and carrier having failed in that duty, equity demanded that they be denied subrogation. The district court

rejected the employee's argument, finding that the right of subrogation remained absolute:

> Against this argument must be weighed the plain wording of the statute. It does not give the employer a mere right to be subrogated but says that the employer "shall be subrogated." ... The legislative mandate is clear—the employer is to have a right to full subrogation—and the courts have interpreted the statute accordingly.

*Id.* at 1064. *Accord Kelly v. Workmen's Compensation Appeal Board (A–P–A Transport Corp.)*, 527 A.2d at 1122.

In its fashioning of an equitable exception to the absolute statutory language, the Commonwealth Court here relied upon a discussion in *Winfree* that followed this Court's recognition in that case that the employer's subrogation right is generally absolute. Specifically, the *Winfree* Court addressed and rejected a claim made by the employee there, which had been accepted by the lower courts, that the employer should be "estopped from exercising its subrogation rights by equitable principles." 520 Pa. at 397, 554 A.2d at 487. The lower courts had denied the employer subrogation because it did not fully cooperate with the employee in the third party negligence action. In evaluating the equitable estoppel claim, this Court noted that the employer's actions had to be viewed in the context of the negligence action, since the employer had been **joined** there as a third-party defendant. Since the employer and employee were in adversarial positions in that litigation, it was reasonable for the employer to be less than fully cooperative. Furthermore, we noted, acceptance of the estoppel argument would place the employer in the "dubious position of cooperating with its employee and running the risk of being found solely liable for vigorously pursuing its own exoneration and losing its subrogation rights." Stating that we would not subject employers to this choice, we held that the statutory right of subrogation remained absolute under the circumstances of that case. *Id.* at 399, 554 A.2d at 488.

It is the fact that the *Winfree* Court addressed the equitable estoppel claim at all, of course, that led the Commonwealth Court panel majority here to conclude that the statutory

subrogation right is subject to defeat under the *ad hoc* weighing of factors inherent in the doctrine of equitable estoppel. That *Winfree* **addressed and rejected** the particular claim of equitable estoppel forwarded there, however, does not definitively resolve the more fundamental question of whether the statutory subrogation right is subject to avoidance upon *ad hoc* equitable grounds **at all.** The **holding** in *Winfree,* as well as this Court's plain language interpretation of the statute in the case, affirmed that the statutory right was absolute. Some discussion of the equitable estoppel claim was necessitated by the fact that the lower courts had actually accepted that argument. That this Court could have rejected the lower courts' analysis outright as a matter of law, in accordance with the plain language of the statute, does not mean that our engaging and rejecting the analysis on the narrower terms presented amounted to an indirect approval of a construction of the statute that was at odds with our own earlier recognition that subrogation was generally absolute.

The notion that *ad hoc* equitable limitations should be available no doubt derives from the common law roots of the subrogation doctrine. Subrogation was an equitable device adopted at common law, which prevented double recovery and ensured that the party at fault, rather than an innocent party, be held responsible for the injury claimed. *E.g., Dale Manufacturing Co. v. Bressi,* 491 Pa. 493, 496, 421 A.2d 653, 654 (1980); *Helms Express v. Workmen's Compensation Appeal Board (Lemonds),* 106 Pa.Cmwlth. 287, 525 A.2d 1269, 1270–71 (1987). Because of its roots in equity, the common law doctrine was itself subject to equitable limitations. *See, e.g., Roberts v. Fireman's Ins. Co.,* 376 Pa. 99, 107, 101 A.2d 747, 750–51 (1954); *Smith v. Yellow Cab Co.,* 288 Pa. at 89, 135 A. at 860.

Notwithstanding the equitable roots and nature of subrogation, this Court cannot ignore the fact that the subrogation right at issue here does not derive from common law judicial authority but, rather, is expressly granted by the Workers' Compensation Act. When the General Assembly adopted subrogation as a statutory matter in the workers' compensation

context, it provided for no equitable exceptions that would eliminate the employer's subrogation right. Rather, the General Assembly determined that the employer was entitled to subrogation whenever an employee's injuries, for which the employer paid compensation, were caused by a third party and the employee received a recovery for the compensable injuries from that third party.

It is not difficult to see why the General Assembly might reach such a conclusion. The Workers' Compensation Act balances competing interests. The Act obliges subscribing employers to provide compensation to injured employees, regardless of fault, either through insurance or self-insurance. *See* 77 P.S. § 501. In exchange, employers are vested with two important rights: the exclusivity of the remedy of worker's compensation and the concomitant immunity from suit by an injured employee, *see* 77 P.S. § 481; and the absolute right of subrogation respecting recovery from third-party tortfeasors who bear responsibility for the employee's compensable injuries. *See Curtis,* 348 F.Supp. at 1064 ("One of the inducements for taking part in the Pennsylvania Workmen's Compensation plan is provided by the grant of subrogation rights"). This leads to the conclusion that an employer who complies with its responsibilities under the Workers' Compensation Act should not be deprived of one of the corresponding statutory benefits based upon a court's *ad hoc* evaluation of other perceived "equities." Had the General Assembly intended to introduce such uncertainty into an otherwise balanced and certain scheme of relative responsibility, it could have done so expressly or by use of less certain language. The General Assembly already having weighed the equities, it would be inappropriate for this Court to approve of *ad hoc* equitable exceptions to subrogation.

Although our disapproval of *ad hoc* equitable exceptions to the statutory right of subrogation, such as those relied upon by the Commonwealth Court below, is enough to decide this particular case, this Court is aware that there may be circumstances where an employer undertakes in deliberate bad faith to subvert a third party suit brought by its employee, circum-

stances which might require a different calculus. The decision in *Curtis v. Simpson Chevrolet,* upon which we have relied in part above, recognized this fact. While in that appeal, a claim of bad faith on the part of the plaintiff's employer was abandoned, the court's opinion suggested that a showing of bad faith or dereliction of duty might have altered its analysis. 348 F.Supp. at 1065. Appellants do not dispute the wisdom of such a limitation, noting instead the absence of any allegation of bad faith here. Brief for Appellants, 20.

The General Assembly has directed in the Statutory Construction Act, 1 Pa.C.S., § 1501 *et seq.,* that the object of interpretation and construction of all statutes is to ascertain and effectuate the General Assembly's intention. 1 Pa.C S. § 1921(a). One of the cardinal presumptions in ascertaining the intention of the General Assembly is that it "does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1). Given the substantial benefits conferred upon employers by the Workers' Compensation Act, and the inherently equitable nature of the doctrine of subrogation, it would be unreasonable to permit an employer both to act in deliberate bad faith to subvert an employee's third party action, and then to demand subrogation arising from that action. Accordingly, nothing in this Opinion shall be construed as suggesting that subrogation would be appropriate in the face of deliberate, bad faith conduct on the part of the employer. No showing of bad faith has been made here, however; thus the employer's right to subrogation remains absolute.

Although this holding makes plain the error in the Commonwealth Court's decision, it does not necessarily bring the appeal to an end. Appellee disputes whether the settlement funds at issue are subject to subrogation at all, since appellee and the third party defendants designated the settlement funds as compensation only for appellee's pain and suffering and appellee's wife's loss of consortium, rather than for medical bills and/or lost wages. Based upon these designations in the third party settlement, appellee and his amicus argue that there is no "identity" or "equatability" of the settlement funds

with the monies appellants have paid in workers' compensation. *See Darr Construction Co. v. Workmen's Compensation Appeal Board (Walker)*, 552 Pa. 400, 409, 715 A.2d 1075, 1080 (1998) (doctrine of subrogation implies need for some identity or equatability of funds); *Dale Manufacturing Co. v. Bressi*, 491 Pa. at 497, 421 A.2d at 655 (right of subrogation arises only where employer shows that he has made payments for work injury arising from negligence of third party "and the fund to which he seeks subrogation was for the same compensable injury for which he is liable under the Act."). Appellants respond by arguing that the parties to a third party settlement should not be permitted to fashion a settlement in such a way as to defeat an employer's subrogation interest. *See, e.g., Bumbarger v. Bumbarger*, 190 Pa.Super. 571, 155 A.2d 216 (1959).

This dispute implicates this Court's recent decision in *Darr*, where we held that, because a loss of consortium claim is derivative in nature and arises from the impact of the spouse's physical injuries upon the marriage rather than from the injuries themselves, there is no identity or equatability of funds and, thus, an employer has no subrogation interest in a spouse's recovery for loss of consortium. *Darr* also recognized, however, the potential for abuse that exists in this area, as settlement agreements might fraudulently be structured merely to defeat a valid subrogation interest. 552 Pa. at 409–11, 715 A.2d at 1080–81.

Although the WCJ and the WCAB addressed this argument, the Commonwealth Court did not, given its broader holding that appellants were barred on equitable grounds from seeking subrogation at all. The parties have devoted argument to considerations involving the content and timing of the settlement negotiations and whether, given the circumstances surrounding the entry of the settlement agreement, the settlement can truly be accepted as one involving only appellee's pain and suffering and his wife's loss of consortium or, rather, was a transparent effort to defeat appellants' subrogation interest. There is some further dispute as to what is of record and what may properly be considered in

resolving this dispute. Given the Commonwealth Court's failure to address the issue at all and the uncertainty of the record, the better course is to leave consideration to the Commonwealth Court in the first instance. Our summary of the respective positions of the parties shall not be construed as expressing any opinion on the validity of those arguments, including any question as to whether they were properly preserved below.

Accordingly, for the reasons set forth above, the order of the Commonwealth Court is vacated and the matter is remanded to that court for further proceedings not inconsistent with this Opinion.

Justice NEWMAN did not participate in the consideration or decision of this matter.

Justice NIGRO files a dissenting opinion.

NIGRO, Justice, dissenting.

I respectfully dissent from the majority opinion since I believe that an employer's subrogation rights as set forth in § 319 of the Workers' Compensation Act are subject to equitable principles. Accordingly, I would hold that under the facts of the instant case, Appellants should be barred from enforcing their subrogation rights under § 319.

The majority's conclusion that, absent a finding of bad faith, the statutory subrogation rights of § 319 are absolute and never subject to equity contravenes the precedent of this Court. In *Meehan v. City of Philadelphia*, 184 Pa.Super. 659, 136 A.2d 178 (1957), the Superior Court, quoting this Court, specifically rejected the argument that equitable principles were not applicable to the subrogation rights of § 319, stating, "We have many times said that subrogation is a matter of pure equity, and is never allowed where it would be inequitable to do so." *Id.* at 181 (quoting *Smith v. Yellow Cab. Co.*, 288 Pa. 85, 135 A. 858, 860 (1927)).

In my view, the instant case is a prime example of why this Court has long held that subrogation pursuant to § 319 is

subject to equitable principles. Here, due to Craig Welding's loss of evidence vital to Claimant's third-party action, the trial court determined that the defendant tortfeasors' ability to prepare a defense was prejudiced.[1] Since Craig Welding's spoliation of the evidence was the sole cause of the prejudice, the trial court ruled that Claimant was precluded from presenting any evidence regarding lost wages or medical bills [2]—damages to which Appellants would have a right of subrogation. Moreover, because Craig Welding's conduct cost Claimant the opportunity to secure a substantially larger settlement or trial verdict, the trial court fashioned the parties' settlement to preclude Appellants from subrogating any of the settlement proceeds by eliminating any recovery for lost wages or medical bills. Thus, the trial court provided equitable relief not only for the defendant tortfeasors by reducing their liability, but also for Claimant by taking into account his lost opportunity of securing a larger recovery.

Despite the fact that Craig Welding's conduct substantially reduced Claimant's potential recovery at trial, the majority would nevertheless add insult to injury by allowing Claimant's recovery to be further reduced by Appellants' subrogation claim, which is approximately $105,000. The result of the majority's decision is that all parties, with the exception of Claimant, benefit from Craig Welding's conduct: Appellants benefit by receiving their full subrogation rights and the defendant tortfeasors benefited at trial since their liability was reduced by at least $113,000, if not substantially more. Claimant, however, is forced to suffer a loss of $105,000 through no fault of his own.

1. Claimant presented the testimony of an engineer who was hired by USF & G to be present at the inspection of the crane in 1988. At the time of inspection, the engineer was of the opinion that the accident was caused by bolts that had malfunctioned. At trial, due to Craig Welding's loss of the bolts, the engineer could not determine whether the bolts were original equipment on the crane or had been replaced post-manufacture. The engineer also could not determine whether the bolts failed due to their design or from improper maintenance.

2. Claimant sought approximately $113,000 in medical expenses. (N.T. 11/18/93 at 4.)

Moreover, Appellants' inaction at trial provides further support for precluding subrogation on equitable grounds. Although counsel for USF & G and its claim personnel were present for both the argument regarding the lost evidence and the trial court's ruling that barred Claimant's recovery for lost wages and medical bills, counsel did not attempt to intervene or otherwise protect Appellants' subrogation interest. Instead, counsel sat silently by while the trial court explicitly prevented Claimant from recovering any damages for lost wages or medical bills-the exact damages to which the majority finds Appellants have a right of subrogation.

While the majority recognizes the possibility that an employer's bad faith can defeat his "absolute" right to subrogation, such a narrow exception does nothing to rectify the injustice that results from holding that Appellants are entitled to subrogation in the instant case. The circumstances of this case clearly show why equity principles should, as this Court has long held, continue to apply to subrogation claims under § 319.