IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard G. Kinzler, Trustee of a          :
Trust for the Benefit of Kyra Kinzler,    :
               Petitioner              :
                                       :
             v.              :
                                       :
Workers' Compensation Appeal              :
Board (Association for Vascular           :
Access and Twin City Fire Insurance       :
Company),                                 :  No. 165 C.D. 2020
               Respondents            :  Argued:  December 8, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE P. KEVIN BROBSON, Judge[1]
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON          FILED:  January 6, 2021


          Richard G. Kinzler (Trustee), trustee of a trust for the benefit of his 23-year-old niece, Kyra Kinzler (Kyra), and executor of the estate of Kyra's deceased mother, Janet Kinzler (Claimant), the original claimant in this matter, petitions for review of the February 7, 2020, order of the Workers' Compensation Appeal Board (Board) affirming the November 1, 2018, decision and order of the Workers' Compensation Judge (WCJ).  This appeal concerns the WCJ's determination that specific loss benefits payable to Claimant, which became part of her estate after her death from non-work-related causes and were then placed in trust for Kyra, are

---

[1] The decision in this case was reached prior to January 4, 2021, when Judge Brobson became President Judge.

subject to the employer's subrogation lien upon the proceeds of the third-party settlement for Claimant's work-related injuries. Upon review, we affirm.

## I. Background

Claimant, a diabetic, worked for the Association for Vascular Access (Employer)[2] as its Director of Marketing, Outreach, and Membership. WCJ Decision, 11/1/18, Finding of Fact (F.F.) 14; Appendix to Brief of Trustee (Appendix) at B-10. At a work-related event at a Cheesecake Factory restaurant in June 2013, Claimant fell from a high stool and landed on her back. F.F. 14; Appendix at B-10. Employer issued a Notice of Compensation Payable dated July 18, 2013, accepting sprain injuries to Claimant's lower back and tailbone and agreeing to pay weekly wage loss temporary total disability benefits of $917.00. Reproduced Record (R.R.) at 9a-10a.

In July 2014, Claimant filed a Review Petition seeking to expand the description of injury to include thoracic fractures, fusion surgery, and ensuing complications. R.R. at 11a-13a.[3] Claimant also commenced a third-party civil tort

---

[2] The term "Employer" as used herein includes both the Association for Vascular Access and its workers' compensation insurer, Twin City Fire Insurance Company.

[3] Claimant described her injuries as:

> lumbar sprain; T7-8 and T11-12 fractures; resultant T8-L3 fusion of lumbar and thoracic spine; multiple pressure related ulcers of right hip, bilateral heels, coccyx/sacral area and abdomen; hypoglycemic encephalopathy and sepsis resulting in cognitive dysfunction, expressive aphasia and right sided weakness, right hip osteomyelitis, MRSA, bacteremia and surgical insertion of gastronomy tube; resultant prolonged infirmity, debility and weakened state resulting in marked incoordination, weakness and impaired dexterity causing impaired mobility; deep vein thrombosis; and depression.

R.R. at 14a-15a.

2

action against the Cheesecake Factory. R.R. at 16a-32a. That lawsuit resulted in a June 2015 settlement to Claimant of $4,375,000.00. R.R. at 33a-43a.

Subsequently, in July 2015, the parties completed a workers' compensation third-party settlement agreement concerning Employer's subrogation lien of $156,492.70 through the agreement date, additional sums for future medical and wage loss benefits, and Employer's prorated share of Claimant's attorney's fees and expenses from the third-party tort suit settlement. R.R. at 44a-45a. The terms of the July 13, 2015, third-party settlement agreement entitled Employer to a net lien amount of $92,583.38; Employer agreed to ongoing weekly payments of 41% "of any future weekly benefits and medical expenses to satisfy its obligation to reimburse its *pro rata* share of [Claimant's] fees and expenses until the subrogation interest is exhausted." R.R. at 45a. Thus, Claimant's weekly benefits were to be reduced from $917.00 to $375.97 from the date of the agreement forward, until satisfaction of Employer's subrogation lien. *See* WCJ Order, 11/1/18; Appendix at B-23. Claimant set up a special needs trust to secure the third-party settlement funds for herself during her lifetime, with her brother as Trustee and her daughter, Kyra, as the beneficiary of a separate trust after her death. R.R. at 46a-67a.

Claimant's condition worsened, including the occurrence of burns from a heating pad she used for her back. F.F. 14; Appendix at B-10. Due to her diabetes, the burns developed into ulcers that failed to heal and became increasingly serious. *Id.* A fall from her bed at home in September 2013 led to an infection, sepsis, and a diabetes flare-up that progressed to a diabetic coma and brain damage. *Id.* Another fall in 2016 led to a broken right leg. F.F. 14; Appendix at B-11. Claimant developed additional ulcers, necrosis on both heels, and an infection on her right heel. *Id.* Ultimately, her lower right leg below the knee was amputated in January

3

2017. *Id.* On April 6, 2017, Claimant filed combined Review and Modification Petitions asserting that the amputation was necessitated by her work-related injuries and constituted a specific loss of the limb. R.R. at 89a-92a.

Unfortunately, Claimant died the following day, April 7, 2017. F.F. 14; Appendix at B-11. As the WCJ notes, however: "None of the various experts in the present case were of the view that the work accident and its consequences [] were implicated in [Claimant's] death." F.F. 8; Appendix at B-7. Thus, relevant to this appeal, this case does not present circumstances where Claimant's daughter, Kyra, could become the recipient in her own right of survivors' benefits as set forth in Section 307 of the Pennsylvania Workers' Compensation Act (Act),[4] 77 P.S. § 561. *See Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bromley)*, 161 A.3d 446 (Pa. Cmwlth. 2017); *see also Fratta v. Workers' Comp. Appeal Bd. (Austin Truck Rental)*, 892 A.2d 888, 893 (Pa. Cmwlth. 2006) ("[I]n situations where there is a fatal claim petition, the deceased employee is never a 'claimant'. Rather, the people in the position of the 'claimant' are the dependents of the deceased employee.").[5]

Employer ultimately accepted additional injuries as work-related, including "lower thoracic fragility spinal fractures, followed by T8-L1 bilateral pedicle screw replacement with rod fixation and allograft fusion"; however, Employer denied Claimant's specific loss claim, maintaining that none of the

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710. Where there is no surviving spouse, children who are not yet legally independent are directly eligible for death benefits. 77 P.S. § 561; *Anderson v. Borough of Greenville*, 273 A.2d 512 (Pa. 1971).

[5] A fatal claim petition was filed here on July 15, 2017, but the WCJ ultimately deemed it "discontinued and withdrawn as moot" given the agreement by both sides that Claimant's death was not due to her work-related injuries. F.F. 8 & Conclusion of Law 6; Appendix at B-6 & B-21.

4

conditions it accepted caused the need for amputation of her lower right leg.  F.F. 9; Appendix at B-7-8.

After considering the evidence, the WCJ concluded that Claimant's work-related injury included nearly all of her claimed conditions, including the ulcers in her right foot that "ultimately led to the amputation of [her] right leg."  F.F. 29 & 31; Appendix at B-17-19.  As such, the WCJ found the amputation of her lower right leg was compensable by 350 weeks of specific loss benefits as provided in Section 306(c)(5) of the Act, 77 P.S. § 513(5).  F.F. 32; Appendix at B-19-20.

However, the WCJ also found as a matter of law that the specific loss benefits payable to Claimant's daughter Kyra through the trust were subject to Employer's subrogation rights and interests.  Therefore, the 350 weeks of specific loss benefits were payable, beginning in the subrogated amount of $375.97 per week until Employer's subrogation lien was fully satisfied, and thereafter in the original or full amount of $917.00 per week.  *See* WCJ Decision, 11/1/18, Conclusion of Law (C.L.) 7; Appendix at B-21 & B-23.  Both sides appealed to the Board, which in a February 7, 2020, decision and order affirmed the WCJ's determination that as a matter of law, Employer's subrogation rights and interests extended to the 350 weeks of specific loss benefits due to Kyra through Claimant's estate.[6]  Board Decision, 2/7/20, at 7-9; Appendix at A-7-9.

Trustee then petitioned for review in this Court.

---

[6] Employer's appeal merely sought to clarify that the specific loss benefits were to be directed to Richard Kinzler as trustee of the trust established for Kyra, rather than in his capacity as executor of Claimant's estate or as trustee for the trust established for Claimant's care during her lifetime; that trust terminated with Claimant's death and the funds became part of the corpus of the trust established for Kyra.  Board Decision, 2/7/20, at 9; Appendix at A-9.  This was not disputed by the Kinzlers and is not at issue in this appeal.

## II. Issue

On appeal,[7] Trustee contends the Board erred in affirming the WCJ's determination that Employer may pay the 350 weeks of specific loss benefits at the subrogation rate of $375.97 per week rather than the original full temporary total disability rate of $917.00 per week until Employer's subrogation lien is satisfied. Trustee's Brief at 23-30. Our determination of this issue requires consideration of the interplay between the workers' compensation areas of specific loss benefits, subrogation, and fatal claims/heritability.

## III. Discussion

### A. Specific Loss Benefits

Specific loss benefits are set forth in Section 306(c) of the Act, 77 P.S. § 513. They are awarded based on the injured worker's average weekly wage, for durations ranging from 28 weeks for the loss of a little finger to 410 weeks for the loss of an entire arm or leg. 77 P.S. § 513. Specific loss benefits generally may not be collected concurrently with temporary total disability benefits; rather, they become payable once an injured worker's temporary total disability compensation ends.[8] *See St. Joseph Hosp. v. Workers' Comp. Appeal Bd. (Ladd)*, 725 A.2d 1287

---

[7] On appeal, this Court's scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact were supported by substantial evidence. *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017). On questions of law, our scope of review is plenary, and our standard of review is *de novo*. *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161 (Pa. Cmwlth. 2016).

[8] If, however, the specific loss, although work-related, is found to be "separate and apart" from the injury giving rise to the temporary total disability, both types of benefits may be collected concurrently. *Lindemuth v. Workers' Comp. Appeal Bd. (Strishock Coal Co.)*, 134 A.3d 111 (Pa. Cmwlth. 2016). An example might be where an accident totally disables the worker due to a serious back injury, but the worker also sustains the loss of a small finger in the same accident.

(Pa. Cmwlth. 1999); *Richardson v. Workers' Comp. Appeal Bd. (Am. Surfpak)*, 703 A.2d 1069 (Pa. Cmwlth. 1997).

When a claimant's death is from a cause other than the work injury, separate specific loss benefits for the permanent loss or loss of use of a body part, to which the claimant would have been entitled had she lived, are heritable by specified survivors under Section 306(g) of the Act. 77 P.S. § 541; *Estate of Harris v. Workers' Comp. Appeal Bd. (Sunoco, Inc. & ESIS/SIGNA)*, 845 A.2d 239, 244 (Pa. Cmwlth. 2004).

## B. Subrogation

Section 319 of the Act states that employers are "subrogated to the right of the employe" and entitled to recover costs paid out in workers' compensation benefits where a third-party caused the employee's injury. 77 P.S. § 671. "The statute is clear and unambiguous. It is written in mandatory terms and, by its terms, admits of no express exceptions, equitable or otherwise. . . . [I]t does more than confer a 'right' of subrogation upon the employer; rather, subrogation is automatic." *Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.)*, 781 A.2d 1146, 1151 (Pa. 2001). "[T]he rationale for this right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence." *Dale Mfg. Co. v. Bressi*, 421 A.2d 653, 654 (Pa. 1980).

In addition to recouping wage loss and medical benefits paid to an injured worker prior to a third-party settlement, the employer may also claim subrogation rights in the settlement funds as to anticipated future wage losses of the

injured worker, up to the value of the third-party settlement recovery. *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain Country Meats)*, 186 A.3d 947, 954-55 (Pa. 2018); *see* 77 P.S. § 671. Thus, the employer is entitled to credit against future installments of benefits payable during the period of the injured worker's disability, to the extent that the third-party settlement exceeds compensation already paid as wage loss benefits; weekly benefits may be suspended or reduced until the employer has recouped the full amount of its subrogation lien. *See Rollins Outdoor Advert. v. Workmen's Comp. Appeal Bd. (Maas)*, 487 A.2d 794, 798 (Pa. 1985).[9]

Here, based on the calculations on the workers' compensation third-party settlement agreement form, Employer agreed to pay Claimant 41% of her ongoing weekly wage loss benefits and apply the remaining 59% to Employer's subrogation lien, thereby reducing her weekly benefits from the original figure of $917.00 to $375.97 until the subrogation lien was satisfied. R.R. at 45a. For the period from the settlement date through the date of Claimant's death, the amounts due and paid under this arrangement are not in dispute.

However, Employer's subrogation lien was not fully satisfied at the time of Claimant's death. R.R. at 44a-45a. The parties disagree concerning whether Employer's subrogation rights extend to Claimant's specific loss benefits, which were not yet payable at the time of her death, and which were not specifically addressed in the settlement agreement. Trustee's Brief at 23-30; Employer's Brief at 8-17.

Our determination of this issue hinges on whether, after Claimant's death from non-work-related causes, there is "equatability" between her pending

---

[9] In exchange, the employer is obligated to pay a *pro rata* share of the counsel fees and expenses, termed "costs of recovery" incurred by the injured worker in securing the third-party settlement or verdict funds. *Bell Tel. Co. v. Workmen's Comp. Appeal Bd. (Artuch)*, 562 A.2d 427, 429 (Pa. Cmwlth. 1989).

specific loss benefits and her third-party recovery funds. *See Anderson v. Borough of Greenville*, 273 A.2d 512, 515 (Pa. 1971) (see discussion of "equatability" in Section "C" below). If so, Employer retains its subrogation interest and may reduce by the remaining lien amount the payments Kyra is due to inherit. *See Reese by Reese v. Workmen's Comp. Appeal Bd. (Penn Nutrients, Inc.)*, 505 A.2d 405, 407 (Pa. Cmwlth. 1986) (equatability persists and subrogation is permitted). The WCJ concluded there was such equatability, and the Board affirmed. WCJ Decision, 11/1/18, C.L. 7; Appendix at B-21 & B-23; Board Decision, 2/7/20, at 7-9; Appendix at A-7-9. This narrow question is one of first impression for this Court.

### C. Equatability

Our Supreme Court has explained the concept of "equatability" as follows:

> The doctrine of subrogation . . . implies the need for some identity between the fund created by the insurance agreement and the fund created by the cause of action against the [third-party] tortfeasor. That is, there is implicit in subrogation an equatability between the obligation of the compensation payor and the obligation of the tortfeasor payor, so that the two funds are going to satisfy the same duty, liability or obligation to the same person.

*Anderson*, 273 A.2d at 515. In *Anderson*, the deceased claimant's widow received standard (not specific loss) death benefits on behalf of herself and her children, and also secured a third-party settlement against the driver of the vehicle that struck and killed her husband, a police officer. *Id*. at 513. The employer pursued its subrogation interests, including a lien against the children's independent shares of

9

both the workers' compensation death benefits and the third-party recovery. *Id.* The Court concluded that to the extent the third-party recovery represented a wrongful death action on behalf of the children in their own right, any such funds were not equatable with the workers' compensation payments their widowed mother received for their care; therefore, the workers' compensation insurance carrier was not subrogated to the recovery received by the children in the wrongful death action. *Id.* at 515.

Thus, under *Anderson*, the equatability between benefits paid to the injured claimant and the third-party recovery based on the same cause of injury at the hands of a third party must persist after the claimant's death in order for there to be a basis for ongoing subrogation against benefits paid to the claimant's surviving family members. However, where, after the claimant's death, surviving children become eligible for fatal claim benefits *in their own right*, rather than derivatively of the deceased claimant's rights, the equatability that supports an employer's right to *post-mortem* subrogation is broken. *Compare Greater Lancaster Disposal/SCA Servs. v. Workmen's Comp. Appeal Bd. (Snook)*, 607 A.2d 334, 338-39 (Pa. Cmwlth. 1992) (children attained an independent right to benefits; therefore, equatability did not persist and subrogation was not permitted) *with Reese by Reese*, 505 A.2d at 407 (children did not attain an independent right to benefits; therefore, equatability persisted and subrogation was permitted).

Section 306(c) of the Act governs specific loss benefits and describes them in its title and first sentence as "disability resulting from permanent injuries." 77 P.S. § 513.[10] This Court has not previously considered whether temporary total

---

[10] The WCJ noted that "specific loss" is the preferred term of usage for these kinds of injuries, but does not itself appear in the Act, which "denominates discrete awards for amputated limbs as '*disability* resulting from permanent injuries[.]'" WCJ Decision 11/1/18, C.L. 7.

disability and specific loss benefits are analogous for purposes of subrogation. However, in *Romansky v. Shalala*, 885 F. Supp. 129 (W.D. Pa. 1995), a federal district court considered "whether an award for a facial disfigurement is an award for a disability under the Pennsylvania Workers' Compensation Act" in the context of a Social Security Disability offset. *Id*. at 131.[11] Although *Romansky* is a federal decision, the court relied on Pennsylvania's specific loss statute, Section 306(c) of the Act, 77 P.S. § 513, and our Supreme Court's analysis in *Killian v. Heintz Division Kelsey Hayes Co.*, 360 A.2d 620 (Pa. 1976), which concluded that specific loss awards encompass "all disability emanating from or connected with the loss of a member or a permanent injury" to that body part. *Romansky*, 885 F. Supp. at 132 (quoting *Killian*).

The *Romansky* Court reasoned that the Act compensates for disabilities, whether they result in loss of earning power under Sections 306(a) and (b) or a presumed loss of earning power from permanent injuries, such as the loss of a body part or permanent disfigurement, under Section 306(c). *Id.* at 132-33. Because both temporary disability and specific loss payments are periodic benefits awarded on account of a disability, the *Romansky* Court found both types of benefits were subject to the Social Security Act's offset provision at 42 U.S.C. § 424a. *Id.* at 133.

Trustee does not dispute as a general proposition that specific loss benefits are subject to subrogation in the same manner as total disability benefits. Here, however, he argues that any equatability ended with Claimant's death, because although she was eligible for specific loss benefits, she ultimately was unable to

---

[11] Facial scarring and disfigurement are among the conditions encompassed by the specific loss provisions of the Act. *See* 77 P.S. § 513(22). Social Security offsets are similar in purpose to subrogation, in that both allow an employer to reduce benefits due to injured workers where certain conditions are met. *See Murphy v. Workers' Comp. Appeal Bd. (City of Phila.)*, 871 A.2d 312 (Pa. Cmwlth. 2005).

11

personally receive those benefits. Trustee's Brief at 28-30. Trustee reasons that because the third-party settlement went to Claimant alone, and Kyra had no claim to those funds during Claimant's lifetime, Employer's right to subrogation against those funds died with Claimant. *Id.* at 26, 29. Therefore, Trustee contends that specific loss benefits for the loss of Claimant's lower right leg similarly belong to Kyra in her own right and are not subject to the subrogation lien. *Id.* at 25-27, 30. Trustee argues that as applied here, *Anderson* negates Employer's right to subrogation concerning the specific loss funds Kyra will inherit. *Id.* at 25-27, 30.

Similarly, Trustee argues that *Romansky* does not apply here because the specific loss benefits received by the injured worker in that case were paid out during his lifetime, which made the offset of those sums from his Social Security Disability benefits viable. Trustee's Brief at 28-29. Trustee asserts that when a claimant receiving temporary total disability benefits dies and there are pending specific loss benefits that could not be collected by the injured worker during her lifetime, but become payable to a surviving child, the specific loss benefits "alter their character" and become analogous to workers' compensation fatal claim survivor benefits, which a surviving child may claim in her own right and which are not subject to subrogation. *Id.*

We disagree with Trustee's arguments. We find the *Romansky* Court's analysis analogous and persuasive here and therefore conclude that specific loss benefits are subject to subrogation in the same manner as temporary total disability benefits.

Under Section 307 of the Act, 77 P.S. § 561, when a claimant receiving temporary total disability benefits dies *from work-related causes*, her death creates an independent right for dependent surviving children to claim survivors' benefits.

12

*See, e.g., Auto Service Councils of Pa. v. Workmen's Comp. Appeal Bd. (Compton)*, 590 A.2d 1355, 1358-59 (Pa. Cmwlth. 1991). The Act prescribes the computation and recipients of the survivors' benefits, which are obtainable by filing a fatal claim petition on behalf of the surviving children. 77 P.S. § 561; *Fratta,* 892 A.2d at 893 ("[I]n situations where there is a fatal claim petition, the deceased employee is never a 'claimant'. Rather, the people in the position of the 'claimant' are the dependents of the deceased employee."). Once the children's independent right and cause of action for fatal claim benefits become effective, equatability is broken and the employer's right of subrogation is ended. *See Anderson*; *Greater Lancaster Disposal/SCA Servs.* It is as if the surviving dependent child inherited a sum of cash free and clear, to do with as she chooses. Importantly, by definition, fatal claim benefits are payable only to the claimant's survivors, because *the claimant herself never had any entitlement to the benefit funds at issue*.

By contrast, under Section 306(g) of the Act, 77 P.S. § 541, when a claimant dies of a cause *not related to her work injury*, any specific loss benefits *to which she was already entitled*, but which she did not collect, are heritable. 77 P.S. § 541; *Estate of Harris*, 845 A.2d at 244. Contrary to Trustee's arguments, however, a claimant's death from non-work-related causes does not convert or "alter the character" of pending specific loss benefits into funds receivable by the surviving recipient *in the survivor's own right*. In contrast to Section 319 of the Act, 77 P.S. § 561, which states plainly that fatal claim compensation benefits are to be paid to dependent surviving children, Section 306(g), 77 P.S. § 541, provides: "Should the employe die *from some other cause than the injury*, payments of compensation *to which the deceased would have been entitled* to [sic] under [the specific loss provision] shall be paid to the [categories of survivors set forth in the statute]." 77

13

P.S. § 541 (emphasis added). Thus, such compensation is expressly *not* paid to the survivors in their own rights. The chain of equatability is therefore not broken and the employer's right of subrogation survives the non-work-related death of the claimant. *Reese by Reese*.

Accordingly, we find that the specific loss benefits Kyra inherited when Claimant died of non-work-related causes remain dependent on the obligations that Claimant was subject to, including Employer's subrogation rights, based on the equatability of the third-party settlement funds and the workers' compensation specific loss benefits to which Claimant became entitled, even if such benefits had not yet become payable during her lifetime.

## IV. Conclusion

Based on the foregoing discussion, the WCJ and Board did not err in concluding as a matter of law that the specific loss benefits Kyra inherited are subject to Employer's subrogation rights and interests. Therefore, Employer is entitled to pay specific loss benefits at the rate of $375.97, rather than the full pre-subrogation amount of $917.00, until the remainder of the subrogation lien is satisfied. From that point forward, benefits will be payable at the full amount of $917.00 per week for the remainder of the 350 weeks of the specific loss benefit award.

Accordingly, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard G. Kinzler, Trustee of a : <br>
Trust for the Benefit of Kyra Kinzler, : <br>
          Petitioner : <br>
: <br>
         v. : <br>
: <br>
Workers' Compensation Appeal : <br>
Board (Association for Vascular : <br>
Access and Twin City Fire Insurance : <br>
Company), :   No. 165 C.D. 2020 <br>
          Respondents :

# O R D E R

AND NOW, this 6th day of January, 2021, the February 7, 2020, order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____ <br>
CHRISTINE FIZZANO CANNON, Judge