# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Donlon,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            :   No. 516 C.D. 2015
                                        :
Workers' Compensation Appeal            :   Submitted:  August 14, 2015
Board (County of Bucks),                :
                                        :
                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  November 4, 2015**


Denise Donlon (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) Decision denying Claimant's Claim Petition seeking total disability benefits for an alleged mental injury[1] that occurred within the scope and course of her employment with the County of Bucks (Employer).  The WCJ also denied

---

[1] Our precedent refers to such injuries interchangeably as mental injuries, psychic injuries, psychological injuries, and psychiatric injuries.

Claimant's Penalty Petition, alleging that Employer violated Section 406.1(a) of the Workers' Compensation Act[2] (Act) by not accepting or denying Claimant's claim within twenty-one days of the alleged work injury. The Board concluded that substantial evidence supported the WCJ's determinations that Claimant did not give Employer timely notice of her injury as required by Section 311 of the Act, 77 P.S. § 631, and did not meet her burden to prove that she suffered from a work-related mental injury. On appeal, Claimant argues that: (1) the totality of the evidence presented establishes that Employer had actual notice of the incident that caused her work-related injury and the resultant effect on Claimant's well-being within the required time period; (2) she satisfied her burden to prove, under the "mental/mental injury" standard, that she sustained an injury within the course and scope of her employment that resulted in her disability; and (3) her Penalty Petition should have been granted by the WCJ. Because substantial evidence supports the WCJ's finding that Claimant did not provide Employer with timely notice of her alleged injury, we affirm.

## I. BACKGROUND

Claimant worked as an appraiser for Employer for six years until she was subjected to an economic lay off in October 2012. (WCJ Decision, Findings of Fact (FOF) ¶¶ 3, 14.) Claimant filed a Claim Petition on November 30, 2012, alleging that she suffers from post-traumatic stress disorder (PTSD) and anxiety

---

[2] Act of June 2, 1915, P.L. 736, as amended, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(a).

stemming from an incident that occurred while she was working on July 24, 2012.[3] Claimant alleged that she "was in a cul-de-sac, and a man walked up to her without identifying himself and pointed a gun right in her face." (Claim Petition at 1, R.R. at 29.) Claimant alleged further that the event caused her to stop working on September 21, 2012 and requested full disability from that date forward. Employer filed a Notice of Compensation Denial (NCD) on January 24, 2013 declining to pay Claimant workers' compensation benefits on the grounds that Claimant's injury was not work related and that Claimant did not give notice to Employer of her injury within 120 days of the alleged injury. The NCD contains conflicting information because it includes the date "07/24/2012" in response to "Date employer received notice or knew of the alleged injury", yet explicitly states that Claimant did not give notice within 120 days and that Employer first received notice of the injury "per 11/30/12 petition." (NCD, R.R. at 40.) The matter was assigned to a WCJ and two hearings were held.[4] After the hearings were held, Claimant filed a Penalty Petition on October 8, 2013, which was assigned to the same WCJ for disposition. The Penalty Petition alleged that Employer violated the Act by not timely filing documents accepting or denying Claimant's injury.

---

[3] Employer's Answer to the Claim Petition does not appear in the certified record. However, Claimant admits in her brief that an Answer was filed on December 18, 2012. (Claimant's Brief at 7.)

[4] During the January 22, 2013 hearing before the WCJ, Claimant amended her Claim Petition to request temporary total disability benefits from October 9, 2012. (Hr'g Tr. at 5, January 22, 2013, R.R. at 46.)

3

## II. PROCEEDINGS BEFORE THE WCJ

In support of her Claim Petition, Claimant testified on her own behalf before the WCJ and via deposition and submitted the deposition testimony of Joan A. Feinstein, Ph.D. Fact witnesses Amy Fiero, Robert Bozena, and Russell Kabana testified before the WCJ on behalf of Employer in opposition to Claimant's Claim Petition. Employer also submitted the deposition testimonies of medical expert Gladys S. Fenichel, M.D., and fact witnesses, Mr. Riggitano, Mr. Bozena, and Richard Brosius.

Claimant testified before the WCJ on January 22, 2013 as follows.[5] Claimant's job duties required her to go to a house, identify herself, and look at any improvements made to the house. On July 24, 2012, Claimant was working in the field in Bensalem Township assessing two homes that had permits for additions. Claimant knocked at the door of the second house and, finding no one home, went to the back of the house to inspect the addition. After measuring the addition in the back of the home, Claimant began to walk back to her car, saw a man walking toward her, and asked the man if he was the homeowner. The man responded by saying "don't worry who I am," pulled out a firearm, and approached Claimant with the firearm pointed at Claimant's face. (Hr'g Tr. at 15, January 22, 2013, R.R. at 56.) The man screamed at her, asked her who she was, and the location of the other person. Claimant tried to explain who she was and the man said that Claimant could slowly remove her identification, and hand it to him. Claimant testified that no one has ever pointed a firearm at her before that moment.

---

[5] The transcript of Claimant's testimony at the January 22, 2013 hearing is found at R.R. 53-103.

The man called the police who arrived shortly thereafter. The police apologetically explained to Claimant that there was a rash of robberies in the area and that the man thought Claimant was with someone else because there was a coat on the passenger seat of Claimant's vehicle. After the police left, the man who pointed the firearm at Claimant remained on the premises and identified himself to Claimant as a police officer.

After the incident, Claimant called her supervisor, Mr. Bozena, on his cell phone to report the incident. Mr. Bozena expressed concern about Claimant's well-being, told her to go home, and have a drink. Feeling too distressed to appraise other houses that day, Claimant went home.

The following day, Claimant went to the Bensalem Township Police Office to file a complaint. She went through the process of filling out a complaint, but there was some confusion regarding the identity of the man with the firearm. Claimant's complaint did not progress any further.

Thereafter, at the request of Employer's office manager, Claimant returned to the office and met with Mr. Kabana, Chairman of the Board of Assessments, and other staff of Employer. Mr. Kabana told Claimant that he would stand behind her if she wanted to file a complaint with the District Attorney.

Claimant returned to work the day after the incident. Claimant began to experience difficulty performing her duties and told her union steward about her anxiety. Claimant then reached out to a counselor through Employer's Employee

5

Assistance Program (EAP). Claimant also went to her family doctor, who prescribed Lorazepam for her anxiety. Claimant's family doctor advised her to apply for workers' compensation, but Claimant chose not to out of fear that she would lose her job. Claimant neither told her supervisor that she was getting counseling or was receiving medical treatment as a result of the July 24, 2012 incident, nor did Claimant tell the office manager about her circumstances.

Although Claimant was having anxiety every time she assessed a house, Claimant continued to work without interruption until she took two weeks off in August 2012 for a pre-scheduled vacation that she hoped would "get [her] head back together." (Hr'g Tr. at 22, R.R. at 63.) After returning from vacation, Claimant was confronted by an agitated homeowner when assessing a house. As Claimant attempted to leave, the homeowner followed her to her car and screamed at her about having his taxes raised. The confrontation made Claimant feel like she could not breathe.

On September 18, 2012, Claimant was notified that she was to be laid off as of October 9, 2012. While laid off, Claimant began receiving unemployment compensation (UC) benefits. Her application for UC benefits stated that she was ready, willing, and able to work without limitations. Claimant sought other employment, applying for at least two appraiser positions in other counties, but now feels like she is unable to perform the duties of an appraiser.

Dr. Feinstein testified in support of Claimant's Claim Petition by way of deposition on February 22, 2013 as follows.[6] Dr. Feinstein is a licensed psychologist and rehabilitation counselor. She first evaluated Claimant on December 11, 2012 for an initial consultation, where she conducted a psychological and medical history. Dr. Feinstein learned that Claimant had some anxiety prior to the July 24, 2012 incident stemming from previous non-work-related events and relationships that occurred in her life. Claimant discussed the July 24, 2012 incident with Dr. Feinstein. Dr. Feinstein opined that Claimant was presenting as highly anxious. Dr. Feinstein saw Claimant again on January 5, 2013. Claimant presented as sad and stated that she was having traumatic reactions and misinterpreting normal stimuli, such as interpreting a knock at the door as a dangerous situation. Dr. Feinstein diagnosed Claimant with "[PTSD] and a high level of anxiety" and opined, with a reasonable degree of psychological certainty, that Claimant's condition was a result of the July 24, 2012 incident and that Claimant was totally disabled. (Feinstein's Dep. at 25, R.R. at 166.)

On cross examination, Dr. Feinstein stated that she was aware that Claimant continued to work after the July 24, 2012 incident until October 2012 and that Claimant was looking for work. Dr. Feinstein discouraged Claimant from looking for work, opined that Claimant was in denial about her condition, and that Claimant's cognitive and anxiety issues would preclude her from working.

---

[6] The transcript of Dr. Feinstein's deposition testimony is found at R.R. 142-188.

Employer submitted the deposition testimony of Dr. Fenichel taken on June 3, 2013, who testified as follows.[7] Dr. Fenichel, a licensed psychiatrist with a board certification by the American Board of Psychiatry and Neurology, conducted an Independent Medical Examination (IME) of Claimant on March 29, 2013 where Claimant explained the July 24, 2012 incident and her symptoms. Claimant told Dr. Fenichel that she did not take any time off from work because "she did not want to make a ruckus with [Employer]." (Fenichel's Dep. at 13.) Dr. Fenichel opined that, if an individual is traumatized and anxious, she would not have been able to continue to work and would have required some immediate mental health treatment. Dr. Fenichel noted that one of the main symptoms of PTSD is avoidance. Dr. Fenichel opined that the fact that Claimant applied for appraiser positions with other counties "speaks to the conclusion that she does not have problems with avoidance, which is necessary for" a PTSD diagnosis. (Fenichel Dep. at 19-20.)

Claimant told Dr. Fenichel about her past history of psychological treatment and that she had previously been treated with medication. In Dr. Fenichel's opinion, the fact that Claimant was treated in the past indicates that, if Claimant was in fact suffering from PTSD, she would have sought immediate treatment. Further, Dr. Fenichel noted that Claimant was taking medications for fibromyalgia and for pain related to previous surgeries. Dr. Fenichel opined that the medication Claimant was receiving for pain affects one's mood and behavior, and Claimant's

---

[7] The transcript of Dr. Fenichel's deposition testimony is found in the certified record at Employer's Exhibit D.

medication regimen was an important consideration in her evaluation of whether Claimant had PTSD.

Dr. Fenichel opined that Claimant did not sustain a mental injury as a result of the July 24, 2012 event and does not have any disability or loss of earnings as a consequence of the incident. The basis for her opinion was that: (1) Claimant continued to work after the alleged work injury; (2) Claimant left her employment only as a result of being laid off; (3) Claimant interviewed for other appraiser positions, but was not offered a job; (4) Claimant applied for UC benefits and acknowledged that she was willing and able to work; (5) Claimant did not file a police report about the incident and returned to work the next day; and (6) Claimant did not report having any problems with anxiety to Employer. After review, Dr. Fenichel disagreed with the testimony of Dr. Feinstein and opined that the basis of the disagreement was Dr. Feinstein's lack of awareness of Claimant's complete history.

Ms. Fiero, Mr. Bozena, and Mr. Kabana testified on behalf of Employer before the WCJ on June 6, 2013. Ms. Fiero, Workers' Compensation Coordinator for Employer, testified as follows.[8] Ms. Fiero is familiar with Claimant and became aware of Claimant's alleged injury on December 5, 2012. Ms. Fiero received the Claim Petition after Claimant was laid off and terminated due to budgetary constraints. Upon receiving the Claim Petition, Ms. Fiero sent an email

---

[8] The transcript of Ms. Fiero's testimony at the June 6, 2013 hearing is found at R.R. 112-120.

9

to counsel for Employer stating that there was no incident report on this matter. Employer's normal procedure is that, if an employee is injured in the course and scope of employment, the employee reports the incident to a supervisor and fills out an incident report. Claimant was familiar with this procedure since Claimant followed it when she was involved in a workplace incident in 2007.

On cross examination, Ms. Fiero was confronted with the NCD filed by Employer on January 24, 2013, stating that Employer received notice of Claimant's injury on July 24, 2012. Ms. Fiero testified that she was surprised that the NCD appears to say Employer received notice on July 24, 2012 because she did not learn of the injury until she received the Claim Petition on December 5, 2012.

Mr. Bozena testified as follows.[9] Mr. Bozena works as a Senior Appraiser/Supervisor at Employer and served as Claimant's direct supervisor at the time of the incident. Mr. Bozena learned of the incident when Claimant called him to report the incident on July 24, 2012. Claimant never told Mr. Bozena that she had been injured as a result of the incident, but it was clear to Mr. Bozena that Claimant was upset. At no time on July 24, 2012, or after, did Claimant tell Mr. Bozena that she required medical treatment. Mr. Bozena did not notice any downturn in Claimant's productivity as a result of the incident and Claimant did not ask for any type of accommodation.

---

[9] The transcript of Mr. Bozena's testimony at the June 6, 2013 hearing is found at R.R. 121-130.

Mr. Kabana testified that he, together with the entire Board of Assessments and other parties, met with Claimant after the July 24, 2012 incident.[10] The purpose of the meeting was for Mr. Kabana to discover what happened the prior day and to determine whether the Board could assist Claimant in taking any action against the police officer. Mr. Kabana testified that this type of meeting was very unusual. According to Mr. Kabana, Claimant did not express the need for any medical treatment at the meeting.

Employer also submitted the August 15, 2013 deposition testimony of Mr. Riggitano, a Senior Claims Adjuster assigned to Employer by Employer's workers' compensation insurer.[11] Mr. Riggitano testified that his duties include investigating claims against Employer, paying benefits, and issuing workers' compensation forms. Mr. Riggitano became familiar with Claimant and her alleged injury when he received Claimant's Claim Petition on December 10, 2012. Mr. Riggitano testified that he issued the NCD on January 24, 2013. He acknowledged that the NCD states that Employer received notice or learned of the injury on July 24, 2012, but testified that the date was put into that document through an auto fill feature in the insurer's computer program. On cross examination, Mr. Riggitano testified that he had no knowledge of whether Claimant spoke to Mr. Bozena or anyone else from Employer on July 24, 2012 about her alleged injury.

---

[10] The transcript of Mr. Kabana's testimony at the June 6, 2013 hearing is found at R.R. 131-136.

[11] The transcript of Mr. Riggitano's deposition testimony is found at R.R. 214-235.

Claimant testified by way of deposition on October 1, 2013 in response to Employer's witnesses and gave an update on her condition as follows.[12]  Mr. Bozena called her multiple times after she returned home on July 24, 2012 to check on her.  Claimant attempted to file a police report at the Bensalem Township police station the morning after the incident, but did not actually file the report because she learned at the police station that the man with the firearm was an officer for Bucks County, not Bensalem Township.  At some point after she returned from her August 2012 vacation, Claimant told Mr. Bozena and Mr. Brosius, the Director of the Board of Assessors at the time, that she was getting counseling and was having a hard time.  Claimant did not ask her supervisors for help because she was already receiving assistance from a doctor referred to her by the EAP.  Contrary to her earlier testimony that she received no accommodation as a result of the incident, Claimant clarified that she did not understand what was meant by accommodation and that she was told by Mr. Bozena and Mr. Brosius that she should not perform any assessments in Bensalem Township.

Claimant testified that she applied for other assessor positions because she thought she could do the jobs.  She then realized that she "was in denial and [she] really needed to continue with [her] treatment through counseling to get better" and decided to give up her license.  (Claimant's Dep. at 20, R.R. at 260.)  Claimant learned of a position in Philadelphia as an assessor for which she was qualified, but she did not apply for the position because she knew she could not do the job in her condition.

---

[12] The transcript of Claimant's deposition testimony is found at R.R. 241-275.

12

Finally, Employer presented the depositions of Mr. Bozena and Mr. Brosius taken on December 6, 2013.[13] Mr. Bozena testified that he reviewed Claimant's deposition testimony and disagreed with Claimant's recollection of the events. Mr. Bozena testified that Claimant never told him that she was seeking treatment through the EAP in September 2012. Further, Mr. Bozena stated that he neither limited the geographic scope of the work, nor told Claimant that she did not have to go to Bensalem Township.

Mr. Brosius, Director of Assessments for Employer, testified that he was present at the meeting where Claimant explained the July 24, 2012 incident to the Board of Assessments. Mr. Brosius stated that at no time during this meeting did Claimant say she needed or wanted medical treatment or counseling as a result of the incident. Mr. Brosius testified in response to Claimant's deposition testimony that she told him that she was in counseling through the EAP and that he was not aware Claimant sought counseling or medical attention, although he acknowledged on cross examination that he plays no role in workers' compensation matters.

After reviewing the evidence, the WCJ made the following relevant findings of fact and credibility determinations:

14. This Judge has reviewed and considered the entire testimony of Claimant. Claimant is credible that an incident occurred on July 24, 2012, when a homeowner holding a gun approached her while she was performing her job duties for [Employer]. She is also credible that the incident caused her anxiety. However, her testimony as to the

---

[13] The transcript of Mr. Bozena's deposition testimony is found at R.R. 295-304. The transcript of Mr. Brosius' deposition testimony is found at R.R. 305-318.

extent of her anxiety and alleged inability to perform her pre-injury position is rejected, based on [Employer's] fact witnesses' testimony and Dr. Fenichel's opinions. To her credit, Claimant was able to perform her full duty job as an appraiser after the July 24, 2012 incident and only stopped work due to an economic lay off in October 2012. Her ability to perform full time work after October 2012 is supported by her applications for employment[,] including other appraiser positions. While [Employer] was clearly aware of the July 24, 2012 incident, Claimant made specific efforts to keep secret the need for any counseling or psychiatric treatment related to the event. Claimant credibly testified before this Judge that she did not fill out an incident report, she did not advise her supervisor that she was seeking counseling after the incident, she did not request medical care for the incident from [Employer], and that she told the office manager "absolutely nothing" about her condition. Claimant's contradictory testimony during her deposition is not credible and is therefore rejected. Overall, her testimony at the hearing, and the [Employer's] witnesses' testimony, support the finding that initially Claimant chose not to treat the July 24, 2012 event as a work-related injury, and therefore did not provide notice to [Employer] or request medical treatment, and changed her mind after the economic layoff, which unfortunately was too late to provide statutory notice.

15. This Judge has reviewed and considered the entire testimony of [Employer's] fact witnesses and finds them to be credible. The testimony of the witnesses support the following findings: Claimant did not complete an incident report indicating a workers' compensation injury occurred; Claimant did not tell her supervisors that she was getting counseling through EAP (a program for all employees and not specifically for work-related injuries); Claimant did not seek medical treatment through [Employer's] workers' compensation procedures; Claimant did not submit her own medical bills for reimbursement within 120 days of the incident; [Employer] did not receive notice of an alleged work-related injury stemming from the July 24, 2012 event until the receipt of the Claim Petition on December 5, 2012; Claimant did not request, and her supervisors did not provide, accommodations for Claimant after the incident; the incident was an unusual event for appraisers; and, her supervisors did not limit or change Claimant's geographic location or schedule due to the incident.

16. This Judge has reviewed and considered the entire depositions of Dr. Feinstein and Dr. Fenichel. This Judge finds the testimony of Dr.

14

Fenichel more competent and credible than that of Dr. Feinstein. Dr. Fenichel has more extensive qualifications and possessed a greater understanding of Claimant's post-incident work status and pre[-]incident biosocial history. Dr. Feinstein's opinion that Claimant was totally disabled as of her first examination of Claimant on December 11, 2012, almost five months after the incident, and suffered from [PTSD] is rejected, as she provides no explanation as to how Claimant could have continued working on a full-time basis at her pre-injury job after the work-related incident and only stopped working due to a layoff. Dr. Feinstein also did not review the medical records from Claimant's initial treatment at EAP or her family physician's records, including for treatment right after the incident, before reaching her diagnoses of Claimant.

17. This Judge finds that Claimant did not provide notice of a work-related injury to [Employer] that required medical treatment or caused a loss in earning power within 120 days of the July 24, 2012 incident.

18. This Judge finds that Claimant did not suffer a loss in earning power due to the July 24, 2012 incident, as she suffered no wage loss between July 24, 2012 and October 9, 2012, and she was laid off for economic reasons effective October 9, 2012.

19. This Judge finds that [Employer] did not violate the terms of the Act when it failed to file Bureau documents, as Claimant did not provide timely notice of a work-related injury until she filed her Claim Petition.

(FOF ¶¶ 14-19.) Based on the above findings, the WCJ concluded: (1) Claimant did not show that she provided Employer notice within 120 days of the July 24, 2012 incident that she suffered a work-related injury; (2) Claimant did not meet her burden to show that, as a result of the July 24, 2012 incident, she suffered from anxiety or PTSD that caused her a loss in earning power; and (3) Claimant did not show that Employer violated the terms of the Act. (WCJ Decision, Conclusions of Law ¶¶ 2-4.)

15

Claimant appealed the WCJ's Decision to the Board. Upon review, the Board determined that substantial evidence supports the WCJ's finding that Claimant did not timely notify Employer of her alleged work-related injury. The Board further concluded that Claimant did not meet her burden of establishing that she suffered from anxiety or PTSD as a result of the July 24, 2012 incident; therefore, the WCJ did not err by denying the Claim Petition. The Board did not address the WCJ's denial of Claimant's Penalty Petition. Claimant subsequently filed the instant Petition for Review with this Court.[14]

## III. CLAIMANT'S APPEAL

On appeal to this Court, Claimant argues that she timely notified Employer of her work-related injury and that she met her burden under the "mental/mental injury" standard to prove that she suffers from anxiety and PTSD directly caused by the July 24, 2012 incident. Claimant also argues that, if this Court determines that her Claim Petition should have been granted, the WCJ erred by not granting her Penalty Petition. We shall begin with addressing the notice issue.

Claimant contends that the totality of the evidence presented establishes that Employer had timely notice of the July 24, 2012 incident and its subsequent effects on Claimant's well-being and ability to do her job. Claimant first argues that the NCD issued by Employer indicates that "'employer received notice or knew of

---

[14] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary finding of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

16

alleged injury or date of employee's claimed disability'" on July 24, 2012. (Claimant's Brief at 12 (quoting NCD, R.R. at 40).) Although Employer presented evidence showing that the date listed on the NCD was a mistake, Claimant argues that Employer did not amend the NCD and, therefore, this Court must judicially determine that Employer knew of the injury on July 24, 2012. Second, Claimant argues that the totality of the interactions between Claimant and Employer shows that notice was timely given to Employer. Claimant notes that the WCJ found that Employer was aware of the July 24, 2012 incident and argues that Claimant's efforts to keep working while trying to overcome mental and emotional difficulties caused by the incident should not be used against her. Claimant contends that penalizing her for attempting to carry on in the face of difficulties is contrary to the humanitarian purposes of the Act and chills workers' willingness to bring mental problems to light.

Section 311 of the Act provides, in relevant part:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

77 P.S. § 631. The claimant bears the burden of showing that the employer was given notice of the injury within 120 days of the claimant sustaining the alleged injury. US Airways and Reliance National c/o Sedgwick Claims Management Services v. Workers' Compensation Appeal Board (Panyko), 779 A.2d 1233, 1237 (Pa. Cmwlth. 2001). "Whether a claimant has complied with the notice

17

requirements of the Act is a question of fact for the WCJ." Id. It is a bedrock principle of workers' compensation law that "the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." Thompson v. Workers' Compensation Appeal Board (USF&G Company), 781 A.2d 1146, 1150 (Pa. 2001). We will not disturb the WCJ's factual findings if they are supported by substantial evidence.[15] Id.

First, we are not persuaded by Claimant's argument that the date listed on the NCD regarding when Employer received notice of the alleged injury is dispositive in this case. The NCD here includes two dates regarding when Employer received notice of the alleged injury – July 24, 2012 and when it received Claimant's Claim Petition dated November 30, 2012, and also includes a separate statement that Claimant did not provide notice within 120 days. Mr. Riggitano testified that he developed the NCD for Employer and that the July 24, 2012 date listed on the NCD for the date Employer learned of the injury was incorrectly inputted into the NCD through an auto fill feature in the insurer's computer program. The WCJ found Mr. Riggitano credible. We cannot overturn that credibility determination, find that the July 24, 2012 date listed on the NCD is correct and, therefore, is dispositive of when Employer had notice of Claimant's alleged work-related injury.

---

[15] "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund), 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

18

Second, substantial evidence supports the WCJ's finding that Employer did not receive timely notice of Claimant's alleged work-related injuries. Claimant does not dispute that she chose not to seek medical treatment through Employer's workers' compensation system and that she did not submit her medical bills for reimbursement prior to filing her Claim Petition on November 30, 2012. Claimant's argument rests solely on her contention that the circumstances show that Employer knew of the incident and the effects of that incident on her ability to do her job.

While it is true that the WCJ found that Claimant provided Employer with notice that she was confronted with a man holding a firearm and that the incident caused her anxiety, the WCJ also found that "Claimant made specific efforts to keep secret the need for any counseling or psychiatric treatment related to the event." (FOF ¶ 14.) Claimant testified that she was aware that the events of July 24, 2012 caused her anxiety shortly after the incident. (Hr'g Tr. at 21-22, January 22, 2013, R.R. at 62-63.) Claimant testified that, in addition to seeking counseling, she sought medical treatment for anxiety, but did not take her family doctor's advice to submit a workers' compensation claim. (Hr'g Tr. at 21-22, R.R. at 62-63.) Claimant originally testified at the January 22, 2013 hearing that she told no one that she was having a hard time and receiving treatment for her anxiety because she did not want her supervisors to think she could not perform her work duties. (Hr'g Tr. at 22, 32-34, R.R. at 63, 73-75.) Claimant further testified that she thought she could handle her anxiety and that she could get counseling and receive treatment on her own. (Hr'g Tr. at 38, R.R. at 79.) Claimant later testified in her October 1, 2013 deposition that she did, in fact, tell her supervisors that she

19

was suffering from anxiety, was having a hard time, and was being treated by a counselor through the EAP. (Claimant's Dep. at 19, R.R. at 259.) The WCJ rejected Claimant's deposition testimony as not credible and, instead, found the testimonies of Mr. Bozena and Mr. Brosius credible as to the fact that Claimant did not tell her supervisors that she was having difficulties or receiving treatment for mental injuries. (FOF ¶ 15.) Contrary to Claimant's deposition testimony, Mr. Bozena unequivocally testified that Claimant never told him that she was seeking treatment or needed assistance. (Bozena's Dep. at 6-7, R.R. at 298-99.) Likewise, Mr. Brosius testified that Claimant did not tell him that she needed or wanted medical treatment or counseling as a result of the incident. (Brosius' Dep. at 21, R.R. at 312.)

Based on the credible evidence of record, the WCJ found that Employer "did not receive notice of an alleged work-related injury stemming from the July 24, 2012 event until the receipt of the Claim Petition on December 5, 2012," and that "Claimant did not provide notice of a work-related injury to [Employer] . . . within 120 days of the July 24, 2012 incident." (FOF ¶¶ 15, 17.) There is no question that Claimant filed her Claim Petition on November 30, 2012, which, according to Ms. Fiero's testimony, was received by Employer on December 5, 2012. (Hr'g Tr. at 7, June 6, 2013, R.R. at 113.) Because the WCJ's findings are supported by substantial evidence, we cannot disturb them on appeal. Thompson, 781 A.2d at 1150.

20

Accordingly, we conclude, pursuant to Section 311 of the Act, that the WCJ did not err in denying Claimant's Claim Petition because Claimant did not provide Employer with notice of her injury within 120 days of the July 24, 2012 incident.[16]

---

[16] Even if Claimant had provided Employer with timely notice of the alleged injury, the Board committed no error in concluding that Claimant did not meet her burden of proving she sustained a disabling work-related mental injury. In a workers' compensation case, the claimant bears the burden of proving that she "sustained an injury during the course of [her] employment and that [s]he is disabled as a result of that injury." Morrison v. Workers' Compensation Appeal Board (Rothman Institute), 15 A.3d 93, 98 (Pa. Cmwlth. 2010). "For purposes of workers' compensation benefits, the term disability is synonymous with loss of earning power." Id. A claimant suffering an alleged mental injury caused by a mental stimulus bears the burden of proving that she suffered a mental injury directly caused by abnormal work conditions. Payes v. Workers' Compensation Appeal Board (PA State Police), 79 A.3d 543, 551-52 (Pa. 2013).

Here, the Board concluded that the WCJ's determination that Claimant did not sustain a compensable mental injury was supported by substantial evidence. Claimant contends that she produced credible evidence proving that her anxiety and PTSD were caused by abnormal work conditions. Claimant argues that the WCJ misapplied the law by concluding that the July 24, 2012 event did not affect her ability to continue working based on Claimant's laudable efforts to continue working despite the difficulties from which she was suffering.

We discern no error in the Board's reasoning. The WCJ rejected Claimant's testimony regarding the extent of her symptoms and her inability to perform her job. (FOF ¶ 14.) The WCJ found, based on Claimant's testimony, that she was able to fully perform her job after the July 24, 2012 incident and that Claimant only stopped working for Employer due to being laid off. (FOF ¶ 14.) Further, the WCJ rejected Dr. Feinstein's testimony that Claimant was totally disabled after the July 24, 2012 incident because it conflicted with Dr. Fenichel's credible testimony that Claimant did not suffer a mental injury as a result of the incident. (FOF ¶ 16.) The WCJ's reasons for finding Dr. Fenichel more credible were clearly articulated in the WCJ's Decision. (FOF ¶ 16.) According to the WCJ, Dr. Feinstein could provide no basis for Claimant's ability to fully perform her job for months after the incident and she did not review Claimant's medical records. (FOF ¶ 16.) Conversely, the WCJ found that Dr. Fenichel had more extensive experience than Dr. Feinstein and Dr. Fenichel possessed a greater understanding of Claimant's post-incident work status and history. (FOF ¶ 16.)

Because the medical evidence presented by Claimant to support her contention that the July 24, 2012 incident resulted in a work-related injury was rejected by the WCJ in its entirety, and substantial evidence supports a finding that Claimant did not suffer a disability as a result of the July 24, 2012 incident, we conclude that Claimant did not meet her burden of proving that she sustained a disabling work-related mental injury.

The Board's Order is, therefore, affirmed.[17]

_____
**RENÉE COHN JUBELIRER, Judge**

---

[17] Because of our disposition, we do not reach the issue of whether the WCJ erred in denying Claimant's Penalty Petition.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Donlon,                           :
                                         :
                    Petitioner           :
                                         :
          v.                             :     No. 516 C.D. 2015
                                         :
Workers' Compensation Appeal             :
Board (County of Bucks),                 :
                                         :
                    Respondent           :

## **O R D E R**

**NOW**, November 4, 2015, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**