Volunteer Fire Companies of     :
Lower Saucon,     :
            Petitioner     :
    :
          v.     :
    :
David Cawley (Workers'     :
Compensation Appeal Board),     :   No. 12 C.D. 2022
            Respondent     :   Submitted: December 15, 2022

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                          FILED: January 10, 2023

          Volunteer Fire Companies of Lower Saucon (Employer) petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) December 7, 2021 order affirming the WC Judge's (WCJ) decision that granted David Cawley's (Claimant) Claim Petition for WC benefits (Claim Petition). Employer presents three issues for this Court's review:[1] (1) whether Claimant provided timely notice pursuant to Section 311 of the WC Act (Act);[2] (2) whether Claimant was entitled to the presumption of causation afforded by Section 301(f) of the Act;[3] and (3) whether Claimant met his burden of proof under Section 108(n) of the Act.[4] After review, this Court affirms.

---

[1] This Court reordered Employer's issues for clarity of the discussion herein.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

[3] Added by Section 2 of the Act of July 7, 2011, P.L. 251, 77 P.S. § 414(f).

[4] Added by Section 1 of the Act of July 7, 2011, P.L. 251, 77 P.S. § 27.1(n).

## Background

Claimant was employed as an active volunteer firefighter with Employer since 1978. Claimant was also self-employed as a small-scale project handyman since 1990. In 2015, Claimant was diagnosed with renal cell (kidney) carcinoma and in 2016, he was diagnosed with colon/rectal carcinoma, for which he has undergone several surgeries, as well as chemotherapy and radiation.[5] Since his diagnoses, his duties for Employer have been limited to exterior firefighting and driving fire trucks.

On December 27, 2017, Claimant filed the Claim Petition alleging that his two types of cancer are compensable based upon exposure to International Agency for Research on Cancer (IARC) Group 1 carcinogens as a volunteer firefighter under Section 108(r) of the Act.[6] *See* Reproduced Record (R.R.) at 2a. Claimant sought total disability benefits as of November 30, 2015, and payment of his medical bills. Employer filed an Answer to the Claim Petition denying Claimant's allegations. *See* R.R. at 6a-8a.

The matter was assigned to a WCJ who conducted a hearing on February 12, 2018. *See* R.R. at 9a-50a. When the hearing commenced, Claimant amended the Claim Petition to include occupational injuries under Sections 108(n) and 301(c)(1) of the Act, 77 P.S. § 411(1). Claimant testified at the February 12, 2018 hearing, and again by August 16, 2018 deposition. Claimant also presented the December 26, 2017 report of internal medicine, pulmonary medicine and occupational medicine specialist Tee L. Guidotti, M.D. (Dr. Guidotti) (*see* R.R. at 51a-65a); and the Pennsylvania Fire Information Reporting System (PennFIRS)

---

[5] From 1978 to 2014, Claimant underwent approximately 15 mandatory physical examinations, and was never diagnosed with cancer.

[6] Added by Section 1 of the Act of July 7, 2011, P.L. 251, 77 P.S. § 27.1(r).

2

summary from 2013 to 2016.[7] Employer offered the January 30, 2019 report of occupational and environmental medicine specialist Howard Sandler, M.D. (Dr. Sandler). *See* R.R. at 66a-90a. On June 28, 2019, the WCJ granted Claimant's Claim Petition, concluding that Claimant sustained his burden of proving his entitlement to benefits pursuant to Sections 108(n), 108(r), 301(c)(2), and 301(f) of the Act. Employer appealed to the Board.

On December 1, 2020, the Board affirmed the WCJ's grant of the Claim Petition, but remanded the case for evidence and findings regarding litigation costs and disability dates. On May 7, 2021, the WCJ adopted his original findings of fact and conclusions of law, made additional findings regarding Claimant's litigation costs, and stated that the parties agreed Claimant was disabled from November 23, 2015 through February 4, 2016 due to his kidney cancer, and from September 8, 2016 through October 3, 2016 due to his colon/rectal cancer. *See* Employer Br. App. B (WCJ Remand Dec.) at 3-4 (R.R. at 195a-196a). Employer appealed to the Board, which affirmed the WCJ's Remand Decision on December 7, 2021. *See* Employer Br. App. A (Board Remand Op.) (R.R. at 206a-215a). Employer appealed to this Court.[8]

---

[7] Employer has been reporting to the PennFIRS system since 2005. *See* R.R. at 41a. Employer's PennFIRS report summary reflects all of Employer's fire calls. *See* R.R. at 97a-98a, 110a-111a, 147a-151a.

[8] "[This Court's] review determines whether there has been a violation of constitutional rights, whether errors of law have been committed, whether board procedures were violated, or whether necessary findings of fact are supported by substantial evidence." *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1252 n.5 (Pa. Cmwlth. 2019).

On June 28, 2022, this Court denied Employer's supersedeas application.

**Discussion**

Initially,

> [a]n injured employee seeking to obtain [WC] benefits for a work-related injury bears the burden of proving all elements necessary to support an award. Pursuant to Section 301(c)(1) of the Act, 77 P.S. § 411(1), an employee's injuries are compensable if they (1) arise in the course of employment and (2) are causally related thereto.

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 75 n.4 (Pa. Cmwlth. 2012) (citation omitted). Section 301(c)(2) of the Act provides, in relevant part: "The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this [A]ct, shall include . . . occupational disease as defined in [S]ection 108 of this [A]ct[.]" 77 P.S. § 411(2).

Section 108 of the Act defines the term "occupational disease" to include, *inter alia*, "[c]ancer suffered by a firefighter[9] which is caused by exposure to a known carcinogen [that] is recognized as a Group 1 carcinogen by the [IARC,]" 77 P.S. § 27.1(r), and "[a]ll other diseases (1) to which [a] claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population." 77 P.S. § 27.1(n).

Section 301(f) of the Act provides, in relevant part:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act] relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and

---

[9] "Section 301(f) [of the Act] . . . imposes the same general causation requirement on both career and voluntary firefighters . . . ." *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 601 (Pa. Cmwlth. 2019) (*en banc*).

4

the examination failed to reveal any evidence of the condition of cancer. The presumption . . . may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting. Any claim made by a member of a volunteer fire company shall be based on evidence of direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act] as documented by reports filed pursuant to the [PennFIRS] and provided that the member's claim is based on direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act].[10]

77 P.S. § 414.

Ultimately,

[t]o provide compensation to injured workers, "a WCJ and the Board are authorized by the Act to determine whether or not an employee who alleges [the employee] was injured during the course of [his] employment is entitled to compensation." *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, . . . 860 A.2d 25, 30 ([Pa.] 2004). In doing so, a WCJ is required to make credibility and evidentiary determinations, to make findings as to the facts underlying the matter, and to determine whether a claimant has met the burden of proving entitlement to compensation, and with regard to these findings and determinations, "the WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight." *Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.)*, . . . 781 A.2d 1146, 1150 ([Pa.] 2001).

*Dep't of Corr. - SCI Chester v. Faison (Workers' Comp. Appeal Bd.)*, 266 A.3d 714, 730 (Pa. Cmwlth. 2021).

**Notice**

Employer first argues that the Board erred by affirming the WCJ's conclusion that Claimant timely notified Employer of his work injury.

---

[10] The purpose of "the PennFIRS reporting requirement in Section 301(f) [of the Act] is to document a volunteer firefighter's presence at a type of fire where firefighters are routinely exposed to Group 1 carcinogens known to cause various types of cancers." *Burnett*, 206 A.3d at 602.

5

Section 311 of the Act specifies:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe . . . shall give notice thereof to the employer within [21] days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within [120] days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury . . . in which . . . its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631. Thus, "[u]nder the Act, notice is a prerequisite for receiving [WC] benefits" for an occupational injury, and this Court has held that "the claimant bears the burden of demonstrating that proper notice was given." *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Flaherty)*, 187 A.3d 1061, 1066 (Pa. Cmwlth. 2018).

Employer specifically contends that, with the exercise of reasonable diligence, Claimant should have known about the potential causal connection between his cancers and his work as a firefighter when he retained his attorney on March 6, 2017, but he did not file the Claim Petition until December 27, 2017, and there is no substantial competent evidence that Claimant provided notice to Employer within 120 days of March 6, 2017.

In an occupational disease case, the notice period begins to run against a claimant when []he has "(1) knowledge or constructive knowledge (2) of a disability (3) which exists, (4) which results from an occupational disease, and (5) which has a possible relationship to h[is] employment. . . ." *Republic Steel Corp. v. Workmen's Comp*[.] *Appeal B*[d.] *(Wojtaszek)*, . . . 413 A.2d 768, 770 ([Pa. Cmwlth.] 1980) (quoting *Republic Steel Corp*[.] *v. Workmen's Comp*[.] *Appeal B*[d.] *(Zacek)*, . . . 407 A.2d 117, 118 ([Pa. Cmwlth.] 1979)) . . . .

6

*Flaherty*, 187 A.3d at 1067 (emphasis omitted). This Court has observed that the General Assembly did not specify in Section 311 of the Act that a physician's confirmation shall trigger the notice period. *See E. Hempfield Twp. v. Workers' Comp. Appeal Bd. (Stahl)*, 189 A.3d 1114 (Pa. Cmwlth. 2018). Rather, "[t]he crux of the issue relating to notice . . . is not when did [the c]laimant *actually* know of the work-relatedness of his injury, but *when* [the c]laimant, through the exercise of reasonable diligence, *should have known* the work-relatedness of his injury." *Id*. at 1119-20 (emphasis in original). Importantly, the "discovery rule [in Section 311 of the Act] requires more than an employee's suspicion, intuition or belief." *The Bullen Cos. v. Workers' Comp. Appeal Bd. (Hausmann)*, 960 A.2d 488, 493 (Pa. Cmwlth. 2008). Accordingly, the WCJ "must [] determine[] whether [the c]laimant made a reasonable effort to discover the cause of his injury under the facts and circumstances present in the case." *Stahl*, 189 A.3d at 1120.

Claimant represented in the Claim Petition that he "provided [] notice [to Employer, on December 1, 2015,] that both cancers were potentially due to his fire service within one week of being diagnosed. He [] filed this [Claim P]etition on the same day that notice was provided that the cancers were due to his volunteer service by a physician." R.R. at 2a-3a. In its Answer, Employer denied knowledge of Claimant's notice. *See* R.R. at 6a.

Claimant testified at the February 12, 2018 WCJ hearing:

Q. [Claimant's Counsel] . . . And after being diagnosed with renal cell cancer did you contact [Employer] regarding the relationship between that cancer and your service?

A. [Claimant] Well, they actually contacted me, I mean.

Q. Who contacted you?

A. Our relief association president.

7

Q. Who was that?

A. Bill Chesler.

. . . .

Q. And as a result of that did you notify [Employer] that you believe the cancer was work-related?

A. Correct.

Q. And was that December of 2015?

A. Correct.

Q. Now, for the rectal cancer do you recall if you contacted anybody from the volunteer fire company or township about that?

A. I don't really remember. I'm not sure. There was a lot going on. I'm not sure.

Q. When you notified [Employer] or when [Employer] notified you about the relationship between the cancer, the renal cell cancer, and your fire service[, a]t that point had any doctor told you or given you a note expressing that the cancer was due to your fire service?

A. No.

Q. Even as we sit here today for both renal cell and the rectal cancer is the only report that you've ever seen relating the two cancers from a Dr. Guidotti . . . ?

A. Yes, that was the only guy.

R.R. at 37a-38a; *see also* R.R. at 124a-125a. Claimant denied any knowledge of the IARC or its chemical carcinogenicity list prior to reviewing Dr. Guidotti's report. *See* R.R. at 39a. Employer did not offer any contradictory evidence.

As "the exclusive arbiter of credibility and evidentiary weight[,]" *Faison*, 266 A.3d at 730 (quoting *Thompson*, 781 A.2d at 1150), "the WCJ may reject or accept the testimony of any witness." *Faison*, 266 A.3d at 736. Here, the WCJ found: "[Claimant] notified [Employer] that he thought the renal cell cancer

8

was work related in December of 2015. He is not sure about the rectal cancer. The only communication he has seen from any doctor relating his cancer to his work as a volunteer fireman is the report of Dr. Guidotti." WCJ Dec. at 4 (R.R. at 155a). The WCJ also found: "The testimony of the Claimant is uncontradicted and credible in its entirety." WCJ Dec. at 7 (R.R. at 158a). Accordingly, the WCJ concluded:

> Claimant has provided timely notice of his claims pursuant to Section 311 of the Act. He advised [Employer] of the potential relationship as soon as he was diagnosed. . . . [H]e never received medical notice of the relationship between fire service and cancers until receiving Dr. Guidotti's December 26, 2017 report.

WCJ Dec. at 8 (R.R. at 159a).

On appeal, neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations,[11] *see Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246 (Pa. 2001), and "[t]he WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018) (quoting *Stepp v. Worker's Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014)). "Substantial evidence . . . [i]s such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa.

---

[11] Specifically, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. [Thus, u]nless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297, 303 (Pa. Cmwlth. 2014) (quoting *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted)); *see also Burnett*, 206 A.3d at 611 (this Court is "bound by the WCJ's credibility determinations"). Capricious disregard "occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). Capricious disregard, by definition, does not exist where, as here, the WCJ expressly considered and rejected evidence. *See id.*

9

Cmwlth. 2018) (quoting *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 943 (Pa. 2004)).

> In reviewing the WCJ's credibility and evidentiary determinations, "[i]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Furnari v. Workers' Comp. Appeal Bd. (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). Thus, this Court's authority in these matters is limited to reviewing the entire record to see if it contains evidence that a reasonable person might find sufficient to support the WCJ's findings. *Id.* If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. *Id.*

*Faison*, 266 A.3d at 736.

> Moreover,

> [w]hen "performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder." *WAWA v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). Further, when determining whether substantial evidence exists to support a finding of fact, this Court must give to the party in whose favor the appealed decision was decided "the benefit of all inferences that can logically and reasonably be drawn from the evidence." *B.J.K. v. Dep*[*'t*] *of Pub*[.] *Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth. 2001).

*Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018).

Here, because substantial evidence clearly supported the WCJ's conclusion that Claimant timely notified Employer in accordance with Section 311 of the Act, the Board properly affirmed the WCJ's decision.

10

**Presumption**

Employer also asserts that the Board erred by affirming the WCJ's conclusion that Claimant was entitled to the presumption of causation afforded by Section 301(f) of the Act. Specifically, Employer claims that the WCJ erroneously granted the Claim Petition based on Employer's purported failure to offer expert medical evidence to rebut the presumption of causation under Section 301(f) of the Act when Employer produced an expert's opinion disputing general causation, so the burden of proof should have returned to Claimant to prove causation by a preponderance of the evidence. Employer further interprets that the burden-shifting framework does not require its medical opinion to first be found credible to rebut the presumption of causation.

> [T]o establish an evidentiary presumption of entitlement to compensation in accordance with [S]ection 301(f) [of the Act], the claimant must establish that he or she
>
> > (1) served four or more years in continuous firefighting duties;
> >
> > (2) had direct exposure to a Group 1 carcinogen; and
> >
> > (3) passed a physical examination prior to asserting a claim or prior to engaging in firefighting duties (and the examination failed to reveal any evidence of cancer).
>
> 77 P.S. § 414. Finally, if the claimant succeeds in demonstrating an occupational disease and an entitlement to the evidentiary presumption of compensability, then the burden of proof shifts to the employer, who must offer "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." *Id.*

*City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207 (Pa. 2018) (footnote omitted).

11

Here, the parties agree that Claimant "served four or more years in continuous firefighting duties[,]" and "successfully passed a physical examination prior to asserting a claim . . . and the examination failed to reveal any evidence of the condition of cancer."[12]  77 P.S. § 414; *see also* R.R. at 16a-17a.  Their disagreement is over whether Claimant "establish[ed] direct exposure to a carcinogen referred to in [S]ection 108(r) [of the Act] relating to cancer by a firefighter[.]" *Id*.

> The express language of **Section 108(r) [of the Act]**, namely that the claimant has a "cancer . . . which is caused by exposure to a known (Group 1) carcinogen" clearly imposes an initial burden of causation on the claimant. Importantly, however, the provision **only requires the claimant to establish a general causative link between the claimant's type of cancer and a Group 1 carcinogen**.  In other words, the claimant *must produce evidence that it is **possible*** that the carcinogen in question caused the type of cancer with which the claimant is afflicted.  It does *not require the claimant to prove that the identified Group 1 carcinogen **actually*** caused claimant's cancer.  Section 108(r) [of the Act] embodies a legislative acknowledgement that firefighting is a dangerous occupation that routinely exposes firefighters to Group 1 carcinogens that are known to cause various types of cancers.  The "general causation" requirement under Section 108(r) [of the Act] constitutes a recognition that different types of cancers have different etiologies and it weeds out claims for compensation for cancers with no known link to Group 1 carcinogens.  The burden imposed by Section 108(r) [of the Act] is not a heavy burden.

*Sladek*, 195 A.3d at 208 (bold and italic emphasis added; footnote omitted).

> Notably, Section 301(f) [of the Act] does not require [] firefighters to identify and document the carcinogens encountered at every incident.  Rather, a [] **firefighter may establish direct exposure to a Group 1 carcinogen**

---

[12] Claimant's last firefighter physical before his cancer diagnoses occurred on December 30, 2014.  *See* R.R. at 96a, 139a-146a.

12

**by evidence of his occupational exposure to fire smoke, soot, diesel exhaust, and other hazardous substances such as asbestos, and expert medical/scientific evidence identifying the Group 1 carcinogens present in those substances**. *See, e.g.*, *Caffey v. Workers' Comp. Appeal Bd. (City of Phila*[.]*)*, 185 A.3d 437 (Pa. Cmwlth. 2018) (career firefighter's testimony of occupational exposure to fire smoke, soot and diesel exhaust, combined with expert medical testimony as to causal relationship between bladder cancer and firefighting exposures to these substances, could support an award of medical benefits under Sections 108(r) and 301(f) of the Act).

*Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 602 (Pa. Cmwlth. 2019) (*en banc*) (emphasis added).

Here, Claimant testified that he has always worked at the same firehouse, which operates three diesel-powered vehicles, and it does not have a diesel fuel emissions capture system. *See* R.R. at 17a-18a. He could see and smell diesel fuel emissions on every fire call for approximately five to eight minutes before the trucks pulled out of the firehouse, during which time he was not wearing breathing protection. *See id*. He was also exposed while the trucks are running at every fire scene. *See* R.R. at 26a. Claimant recalled that the firehouse apparatus door, walls, and ceiling were covered in diesel fuel soot, which he periodically participated in cleaning without being given personal protective equipment. *See* R.R. at 19a.

Claimant described that he fought at least 1,000 interior and exterior fires over the years, including house, car, trash, brush, and warehouse fires.[13] *See* R.R. at 19a-22a. Claimant presented Employer's pre-PennFIRS and PennFIRS reports reflecting his firefighting since 1979. He stated that he participated in all firefighting stages, including: the attack phase (entry, search, rescue, ventilation and

---

[13] Claimant estimated the number of his fire calls by reviewing Employer's fire reports since 1979. *See* R.R. at 41a, 96a-97a.

suppression), the overhaul phase,[14] the salvage phase, and the fire investigation phase, all of which exposed him to soot and smoke. *See* R.R. at 21a-22a. Claimant explained that, although firefighters now use self-contained breathing apparatuses (SCBAs)[15] for all types of fires and phases, for the first 20 years or so of his service, SCBAs were not used for exterior fires, car fires, overhaul, or salvage. *See* R.R. at 23a-24a.

Claimant stated that, although he wore bunker gear (pants, boots, coat, Nomex hood, helmet, and gloves) during the active phases of fighting fires, the gear was not 100% sealed, so he was exposed to soot and smoke even with it on, and also when he removed the equipment for overhaul and salvation, which further exposed him to ash and building material debris. *See* R.R. at 24a-27a. He was also exposed to all of those materials when he cleaned his bunker gear and the firefighting equipment after each fire. *See* R.R. at 25a. Claimant stated that, as a handyman, he was not exposed to the types of hazardous materials he encountered when firefighting. *See* R.R. at 27a-28a.

Claimant recalled that for the five years before starting his handyman business, he was employed as a laborer at American Olean Tile, which manufactured clay quarry tile. *See* R.R. at 28a-29a. He declared that he was not exposed to clay dust in that job. *See* R.R. at 29a. Claimant recollected that he worked as an auto mechanic at TD Automotive for approximately one and one-half years before going to work for American Olean Tile, but he did not perform diesel mechanic work in that job. *See id.*

---

[14] Claimant described: "Overhaul is when you're going in and pulling down the walls looking for hot spots, mopping up, . . . tearing ceiling[s] down, moving stuff, cleaning up." R.R. at 23a.

[15] SCBAs provide firefighters with fresh, clean air for approximately 30-45 minutes. *See* R.R. at 22a.

Claimant asserted that he has no family history of renal or rectal cancer, although his father had esophageal cancer. *See* R.R. at 35a. He testified that he did not live in a house with smokers, and his wife does not smoke. *See* R.R. at 36a. Although he is not a smoker, he admitted to smoking a cigar on rare occasions. *See* R.R. at 35a. He recalled that firefighters were permitted to smoke in the firehouse. *See* R.R. at 36a. Claimant reported that he is currently doing well, and undergoes regular cancer checks and scans. The WCJ found Claimant's testimony "uncontradicted and credible in its entirety." WCJ Dec. at 7 (R.R. at 158a).

The WCJ made the following findings which are based on statements contained in Dr. Guidotti's report:

> [3.]f. Dr. Guidotti reported that firefighters are exposed to chemical hazards with known and suspected carcinogens. Skin absorption can be significant for chemical hazards. Most toxic chemical exposures in fire[]fighting come through general combustion involving not just wood and paper but synthetic materials producing other toxic chemical products. These include polycyclic aromatic hydrocarbons, some of which are known carcinogens, volatile organic compounds, including benzyne carcinogen and nitroarenes. Fine particulate matter is produced by fire and diesel exhaust. Other hazardous materials, such as asbestos and polychlorinated biphenyl compounds may be encountered. Halogenated flame retardants are a new class of chemical hazard.
>
> g. Dr. Guidotti opined that both colon and rectal cancers are more common among firefighters. He opined that multiple studies established that kidney cancer is associated with firefighting. Similarly, multiple studies relate colon and rectal cancer to be elevated among firefighters with a consistent association to firefighting.
>
> h. [Dr. Guidotti] opined that firefighters are exposed to several IARC Group [1] carcinogens that cause kidney, colon[,] and rectal cancers including chlorinated hydrocarbons, tetrachloroethylene [(IARC Group 1),] and trichloroethylene.

15

i. [Dr. Guidotti] opined that [] Claimant did not have the other risk factors of obesity, smoking[,] and diabetes. He did not abuse alcohol, did not have inflammatory bowel disease and did not have an extreme diet.

j. Consequently, [Dr. Guidotti] opined that [] Claimant developed his cancers as a consequence of exposure to IARC [Group 1] chemical carcinogens encountered in the course of his work as a firefighter.

WCJ Dec. at 6-7 (R.R. at 157a-158a).

The WCJ made the following findings based on statements included in Dr. Sandler's report:

[4.]b. Basing his opinion on the PennFIRS reports [Dr. Sandler] reported that there was no specific carcinogen exposure.

c. [Dr. Sandler] opined that the epidemiological evidence does not support a causal association between fire[]fighting and kidney cancer.

d. [Dr. Sandler] disputed studies and data that establish an increase in colon and rectal cancer within the fire service. He pointed to data which in his opinion demonstrated no relationship.

e. [Dr. Sandler] admitted that firefighters may be exposed to IARC Group [1] carcinogens and recognized that firefighters are exposed to benzene, butadiene, and halogenated hydrocarbons.

f. Although [Dr. Sandler] does not directly challenge the opinion that kidney cancer and colon/rectal cancer can be caused by exposure to IARC Group [1] carcinogens, he opines there is not sufficient evidence of dose and exposure. He drew no conclusion from [] Claimant's long period of fire service from 1978 to 2012.

g. [Dr. Sandler] opined that Claimant's cancers were not the result of occupational exposure, but he did not attempt to explain the cause of [] Claimant's cancer[s].

WCJ Dec. at 7 (R.R. at 158a).

16

The WCJ found:

> The opinions of Dr. Guidotti are persuasive and more credible than Dr. Sandler's opinions to the contrary. [This WCJ] note[s] Dr. Guidotti's broad experience in the field and his recognition of [] Claimant's various potential risk factors beyond firefighting. Moreover, he noted the length of [] Claimant's career in considering exposures. Dr. Sandler's less persuasive opinions are hindered by his failure to appropriately consider [] Claimant's 39 years of firefighting.

WCJ Dec. at 8 (R.R. at 159a). Accordingly, the WCJ found that "Claimant's renal cell and rectal cancer are the types of cancer possibly caused by IARC Group 1 carcinogens[,]" and that "Claimant has established entitlement to the rebuttable presumption of Section 301(f) of the Act." *Id.* The WCJ concluded that "Claimant has proven through substantial, competent[,] and expert evidence herein found credible, his entitlement to compensation for renal cell and colon/rectal cancer[,]" and Employer "has failed to offer expert medical evidence, herein found credible, to rebut the presumption." *Id.*

Notably, Dr. Sandler did not contest Dr. Guidotti's opinions, based on the totality of research data that IARC Group 1 carcinogens may cause renal and rectal cancers in firefighters due to their work environment. Dr. Guidotti reviewed numerous studies that have demonstrated a link between firefighting and elevated risks of kidney cancer. In one study, which Dr. Guidotti described as "the largest and best-conducted study to date," R.R. at 57a, reflected a strong association between firefighting and kidney cancer that "was statistically significantly elevated for firefighters with at least 20 years [of] service[.]" R.R. at 56a.

Dr. Guidotti acknowledged that, although a person's lifestyle (i.e., diet, activity, obesity, etc.) is a risk factor for colon/rectal cancer, "[o]verall, the weight of evidence suggests that colon and rectal cancer incidence are elevated among

17

firefighters and that there is a consistent association with occupation as a firefighter."

R.R. at 59a. He described:

> [T]here are three well-known and proven mechanism[s] for carcinogens in fire smoke to reach the colon and rectal to cause cancer: 1) deposition in the lung or deposition on skin (involving smaller amounts) followed by entry into the circulation and exposure of tissue to the carcinogens in blood[;] 2) oral ingestion which occurs when, for example, a firefighter licks his lips in the heat[;] and 3) deposition in the lung followed by ingestion of particles brought back up to the mouth and swallowed. There is not sufficient scientific evidence to know which is most important but[,] in my opinion[,] the mucociliary escalator is probably the major mechanism for colon and rectal cancer risk.

R.R. at 60a. Based on the foregoing, we agree with the WCJ that Claimant was entitled to the presumption under Section 301(f) of the Act because he "produce[d] evidence that it is **possible** that [an IARC Group 1 carcinogen] caused the type of cancer[s] with which [he was] afflicted." *Sladek*, 195 A.3d at 208 (emphasis in original).

> The Pennsylvania Supreme Court has explained:
>
> To reach the stage of the proceedings at which the employer attempts to rebut the presumption of employment-related causation, the claimant has already carried his or her Section 108(r) [of the Act] burden of proof that his or her cancer is of a type that may be caused by a Group 1 carcinogen. The employer may not rebut the evidentiary presumption merely by revisiting this determination and challenging its accuracy. At **the rebuttal stage**, the issue relates not to "types of cancer" relative to potential carcinogens, but rather **requires proof [] that the cancer from which the claimant suffers was not caused by his occupation as a firefighter**.[16]

*Sladek*, 195 A.3d at 210 (emphasis added).

---

[16] Employer argues that the WCJ erroneously "placed the burden on Employer to prove a negative, i.e.[,] that Claimant's cancer[s] [were] not caused by his firefighting activities . . . ." Employer Br. at 27. However, that is precisely what the law requires. *See Sladek*.

18

> [T]he language of Section 301(f) [of the Act] plainly . . . **requires the employer to sustain its burden of proof by demonstrating (1) the specific causative agent of [the] claimant's cancer, and (2) exposure to that causative agent did not occur as a result of his or her employment as a firefighter**.

*Id*. at 209 (emphasis added). "When evidence is introduced that rebuts the presumption, [the presumption] disappears." *Burnett*, 206 A.3d at 607. However, an employer's expert evidence that is not found credible or persuasive cannot rebut the presumption. *See id*.; *see also City of Phila. v. Est. of Burke (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth. No. 1215 C.D. 2020, filed July 30, 2021).[17]

Employer presented Dr. Sandler's report to rebut the presumption in Claimant's favor. Based upon the PennFIRS summary, Dr. Sandler estimated that Claimant would only have reported to approximately 50 *structure* fires during the span of his employment. *See* R.R. at 69a-70a. Dr. Sandler reviewed studies and determined that "the alleged volunteer structural/building firefighting as performed by [Claimant] over a limited time frame and frequency of response does not meet either the general causation or individual causation criteria required for establishing a causal nexus for his renal cell carcinoma and colorectal carcinoma." R.R. at 77a.

Dr. Sandler declared:

> There is no evidence to support a conclusion that exposure to arsenic, asbestos, benzene, benzo[a]pyrene, diesel exhaust, formaldehyde, trichloroethylene and tetrachloroethylene and soot as a firefighter were substantial causal or contributing factors in the development of [Claimant's] renal cell carcinoma and colorectal carcinoma. . . . [I]t is not scientifically

---

[17] On August 30, 2021, the City of Philadelphia filed a Petition for Allowance of Appeal, which the Pennsylvania Supreme Court denied on February 8, 2022.

This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Estate of Burke* is cited for its persuasive value.

demonstrated using appropriate causal determination methodology that any of the above potential exposures as a firefighter leads to the development of renal cell carcinoma and rectal carcinoma much less to the extremely limited exposure documented in this matter.

R.R. at 78a.

Dr. Sandler offered that Claimant's cancers "[were] most likely caused by his underlying personal risk factors . . . including genetic propensity, essential hypertension and other potential personal etiologic risk factors such as analgesic medication." R.R. at 78a. He noted Claimant's father's cancer history and "a family mesothelioma [] reported in the medical reports." R.R. at 69a. Dr. Sandler further stated:

> One of the strongest risk factors for the development of kidney cancer is the presence of hypertension . . . . [Claimant] has suffered from hypertension for many years prior to the clinical development of his bilateral kidney cancer. Analgesia use has also been identified as a kidney cancer risk factor including a recent meta-analysis of the epidemiological evidence . . . . It is not known at present what[,] and if so the degree of[,] analgesic medication [Claimant] may have used for his various painful comorbidities . . . .

*Id*. Employer claims that Dr. Sandler "provided a specific, non-firefighting related cause of Claimant's cancer[s that] was sufficient as a matter of law under *Sladek* to rebut the statutory presumption." Employer Br. at 27. However, the WCJ disagreed.

Dr. Guidotti observed regarding Claimant's genetic history:

> It is well known that people who have had one cancer are at higher risk for a second cancer at another site. Synchronous or metachronous cancers (where two or more occur at about the same time) are uncommon and usually occur by a different mechanism, either because the person has a defect in the ability to stop cancer once it is initiated or because the person has been exposed to chemicals that cause cancer in two different organs.

20

The presence of two (or more) cancers in one individual sometimes indicates a genetic association of the cancer (most commonly Lynch syndrome, which [Claimant] does not have - it was ruled out by the DNA test). This association, however, is almost always a genetic defect in the repair of DNA following damage. Gene repair defects therefore are conditions in which the person is more susceptible to chemical causes of cancer, a situation variously described as a "thin skull" or "eggshell" condition. Thus, the presence of a known or suspected gene-repair defect does not rule out an occupational cause for cancer in a firefighter. It strongly suggests that the cancer is more likely to be work-related, not less likely. But for the exposure, the cancers would be unlikely to initiate in the first place and but for the gene-defect the cancer would be unlikely to progress to a clinical cancer.

R.R. at 61a.

Dr. Guidotti further declared:

[A] genetic predisposition to cancer in this context almost always means that the person inherited a condition in which the body lacks the ability to stop a cancer - it does not necessarily mean that the genetic condition caused the cancer. A genetic defect in stopping cancer makes it much more likely that a person exposed to carcinogenic chemicals, such as a firefighter, will develop cancer after exposure. It does not mean that the genetic defect caused the cancer in the first place.

R.R. at 54a.

Dr. Guidotti also acknowledged that Claimant had "a history of essential hypertension prior to his kidney cancer[,]" but explained that the "association between hypertension and risk of kidney cancer appears to be related to obesity, which was not a factor in [Claimant's] case[,]" "the risk conferred by hypertension . . . is . . . less than the risk associated with firefighting, which can range much higher[,]" and "[h]ypertension is not associated with rectal cancer." R.R. at 61a. The WCJ clearly considered and rejected Dr. Sandler's testimony that conflicted with Dr. Guidotti's, which the WCJ was authorized to do.

21

Because the WCJ's credibility determinations were not made arbitrarily and capriciously and his findings were supported by substantial evidence, this Court may not disturb them on appeal. *See Sell*; *see also Rogele, Inc*. Based on the expert evidence the WCJ found credible, Employer failed to rebut the presumption by "pro[ving] [] that the cancer[s] from which [] [C]laimant suffer[ed] was not caused by his occupation as a firefighter." *Sladek*, 195 A.3d at 210. Accordingly, the Board properly affirmed the WCJ's conclusion that Claimant was entitled to the presumption of causation afforded by Section 301(f) of the Act.

**Section 108(n) of the Act**

Lastly, Employer asserts that the Board erred by affirming the WCJ's conclusion that Claimant met his burden of proof under Section 108(n) of the Act. In particular, Employer contends that, despite the statutory requirement, the WCJ rendered no findings and Claimant offered no evidence showing there is a greater incidence of kidney or rectal cancers within the firefighting occupation than in the general population.

To prove his entitlement to WC benefits under the catch-all provision in Section 108(n) of the Act, Claimant had to show that his cancers resulted from his exposure by reason of his firefighting, that the cancers were causally related to his firefighting, and that the incidence of such cancers "is substantially greater in that industry or occupation than in the general population." 77 P.S. § 27.1(n).

The WCJ specified in Finding of Fact 3.g., which was supported by substantial record evidence that the WCJ deemed credible: "Dr. Guidotti opined that both colon and rectal cancers are more common among firefighters. He opined that multiple studies established that kidney cancer is associated with firefighting. Similarly, multiple studies relate colon and rectal cancer to be elevated among firefighters with a consistent association to firefighting." WCJ Dec. at 6 (R.R. at

22

157a). Because the WCJ made a finding of fact based on substantial evidence that he found credible, the Board properly affirmed the WCJ's conclusion that Claimant met his burden of proof under Section 108(n) of the Act.

## Conclusion

> After a careful review of the record in this matter, th[is] Court concludes that the WCJ's findings of fact are supported by substantial evidence of record, including[,] *inter alia*[,] the credited testimony from Claimant and his medical witness, Dr. [Guidotti], which establishes the causal connection between Claimant's disease and his employment. Moreover, th[is] Court determines that Claimant satisfied statutory notice requirements and that the evidence, when viewed in a light most favorable to the prevailing party, supports the conclusion that Claimant met his burden to prove that he suffered a compensable occupational [] disease caused by his . . . employment with Employer.

*The Bullen Cos.*, 960 A.2d at 494. Accordingly, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Volunteer Fire Companies of
Lower Saucon,
                  Petitioner

         v.

David Cawley (Workers'
Compensation Appeal Board),
                  Respondent

:
:
:
:
:
:
:
:
:    No. 12 C.D. 2022
:

## O R D E R

AND NOW, this 10th day of January, 2023, the Workers' Compensation Appeal Board's December 7, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge